**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **HUNTINGTON TECHNOLOGY FINANCE,** | : | **CIVIL ACTION NO. 3:18-cv-01708-VLB** |
| **INC., f/k/a MACQUARIE EQUIPMENT** | : | |
| **FINANCE, INC., f/k/a MACQUARIE** | : | |
| **EQUIPMENT FINANCE, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **GARETT ALAN NEFF a/k/a GARY NEFF,** | : | **July 26, 2019** |
| **JOHN MARK SCHMID,** | : | |
| **and DAVID KARL SCHMID,** | : | |
| | : | |
| **Defendants,** | : | |

**<u>DEFENDANTS' MEMORANDUM OF LAW</u>**
**<u>IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

1

## **TABLE OF CONTENTS**

**Introduction** ................................................................................................... 4

**Statement of Facts** ........................................................................................ 5

**Argument** ........................................................................................................ 9
    **A.**    **SUMMARY JUDGMENT STANDARD** ......................................... 9
    **B.**    **THE PLAINTIFF IS NOT ENTITLED TO THE LESSOR'S RETURN UNDER THE LEASE DOCUMENTS** ..................................................... 11
        **1.**    ***The Lease Documents Represent a Financing Transaction, Not a True Lease.*** ................................................................. 11
        **2.**    ***The Plaintiff is not entitled to* collect *the Lessor's Return in this secured financing transaction.*** ................................ 15
    **C.**    **THE PLAINTIFF IS NOT ENTITLED TO TAXES** ..................................... 17
    **D.**    **THE PLAINTIFF IS NOT ENTITLED TO DEFAULT INTEREST** ............. 19
    **E.**    **CONCLUSION** ........................................................................... 21

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ...........................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................................................10, 11

*Fangio v. Vehifax Corp. (In re Ajax Integrated, LLC)*, 554 B.R. 568, 578 (Bankr. N.D.N.Y. 2016) ........................................................................................................14, 15

*Glotzer v. Glotzer*, 111 Misc. 2d 171, 173, 443 N.Y.S.2d 812 (Sup. 1981) ........................12

*In re Campbell*, 513 B.R. 846, 851 (Bankr. S.D.N.Y. 2014) ...........................................19

*In re Uni Imaging Holdings, LLC*, 423 B.R. 406, 416 (Bankr. N.D.N.Y. 2010) ....................14

*Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) .....................................................10

*L&B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 92 (2nd Cir. 1998) ...................5

*Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 50 (2d Cir. 2009).......................10

*Orix Financial Services v. Thunder Ridge Energy, Inc.*, 2005 U.S. LEXIS 41889, *31 (S.D.N.Y. 2005) ........................................................................................................5

*PSINet, Inc. v. Cisco Systems Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 45 (Bankr. S.D.N.Y. 2001) ...............................................................................12, 14, 15

*Tymon v. Wolitzer*, 39 Misc.2d 504, 240 N.Y.S.2d 888 (N.Y. Sup. Ct. 1963) ....................20

*U.S. Bank Trust Nat'l Corp. v. AMR Corp. (In re AMR Corp.)*, 730 F.3d 88, 100 (2d Cir. 2013) ........................................................................................................20

*Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 348 (1924)...12

*Wurzler v. Clifford*, 36 N.Y.S.2d 516, 517 (N.Y. Sup. Ct. 1942) .....................................20

**Statutes**

2014 N.Y. Sess. Laws § 51 ....................................................................................13

N.Y. U.C.C. Law § 1-201(37) ...................................................................................13

New York Tax Law section 1105(a) ...........................................................................17

**Other Authorities**

State of New York Commissioner of Taxation and Finance Advisory Opinion, Petition No. S960708A..................................................................................................18

State of New York Commissioner of Taxation and Finance Advisory Opinion, Petition No. S970806E..................................................................................................18

**Rules**

Federal Rule of Civil Procedure 56(a).....................................................................9, 10

Uniform Commercial Code former section 1-201(37)........................................12, 14, 15, 18

Uniform Commercial Code vol. 4, sec. 30-3, 14 n.18 (5th ed. West 2002) ........................11

## Introduction

Defendants Garett Neff ("Neff"), John Schmid ("J. Schmid") and David Schmid ("D. Schmid," and together with Neff and J. Schmid, the "Defendants") submit this memorandum of law in support of their Motion for Partial Summary Judgment (the "Motion"). In late 2010, Garage Media NY LLC ("GMNY") borrowed a net of approximately $6 million from the Plaintiff to finance the purchase and construction of a Mediamesh sign attached to the Port Authority Bus Terminal in New York City. The Defendants guaranteed GMNY's obligations to the Plaintiff, which guaranty is the basis for the Plaintiff's claim against the Defendants in this action. GMNY made regular payments on the loan through February 2015, and then sporadically thereafter (GMNY made four partial payments after February 2015). The Defendants believe that through February 2015, GMNY amortized approximately 50% of the net amount of the principal of the loan, or approximately $3 million. In paragraph 15 and 16 of its complaint in this action (the "Complaint"), the Plaintiff alleges that upon default under the Lease Documents (as defined below) it is entitled to payment of a Lessor's Return (as defined below), plus other unspecified amounts, and that as of October 1, 2018, the Lessor's Return, plus other unspecified amounts, totaled $8,302,118.35. *The Plaintiff is claiming that the amount it is owed went from some $3 million as of the first quarter of 2015 to $8.3 million as of the beginning of the fourth quarter of 2018, or an increase of some 175% over a three and one-half-year period.*

The Plaintiff's claimed entitlement to the Lessor's Return depends upon the underlying transaction between the Plaintiff and Garage Media NY LLC ("GMNY")

having been a true or finance lease, as opposed to a lease intended as security or loan. There is no genuine dispute as to any material fact that the transaction between the Plaintiff and GMNY was a lease intended as security, *i.e.*, a loan, and as such the Plaintiff is not entitled to the Lessor's Return.  In addition, while the Plaintiff has not been clear as to the components of what it claims is due under the Lease Documents,[1] there is no genuine dispute that other amounts that the Defendants understand the Plaintiff is claiming are owed by GMNY are not in fact owed. [2]

## Statement of Facts

On October 26, 2010, GMNY and CBS Outdoor Media ("CBS") entered into a Display Agreement. (Defendants' Rule 56(a)(1) Statement (the "R. 56 Statement"), at ¶ 4(a).) The Port Authority of New York and New Jersey (the "Port") agreed to and acknowledged the Display Agreement. (*Id*.) As recited in the Display Agreement, CBS and the Port had earlier entered into a Permit Agreement dated May 20, 1996 (as amended, the "Permit Agreement"), pursuant to which CBS was given permission by the Port to install and operate an outdoor advertising sign on the exterior of the Port Bus Terminal (the "PA Terminal") in New York City. (*Id*.) The Permit Agreement granted

---

[1] As stated, the Defendants believe that they amortized approximately $3 million of the $6 million borrowed (net of security deposit).  However, how the Plaintiff calculated its claim under the Loan Documents (as defined below) is somewhat of a mystery—in discovery, the Plaintiff did not produce documents which detail the amount claimed, and the two employees of the Plaintiff designated as having knowledge of the claims made by the Plaintiff in the Complaint displayed little knowledge in their depositions of what is owed beyond the approximately $3.8 million described below.

[2] The Plaintiff may claim that the Defendants waived various defenses in the Guaranty and so may not challenge the amount claimed as due and owing, but a waiver of defenses "does not foreclose a challenge to the amount owed."  *L&B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 92 (2nd Cir. 1998); *see also Orix Financial Services v. Thunder Ridge Energy, Inc.*, 2005 U.S. LEXIS 41889, *31 (S.D.N.Y. 2005). What the Defendants challenge in this Motion is the amount owed by GMNY on the underlying obligation.

CBS the right to license its rights to a third party with the prior approval of the Port. (*Id.*) Pursuant to the Display Agreement, CBS licensed its rights under the Permit Agreement to GMNY for the purpose of granting GMNY the right to install a Mediamesh digital sign (the "Sign") on the PA Terminal. (*Id.*)

Also on October 216, 2010, GMNY, GMCT, A2a Media, Inc., GKD-USA Inc. ("GKD") and the Plaintiff entered into an Equipment Purchase Agreement pursuant to which, among other things, GKD agreed to sell and construct the Sign. (R. 56 Statement, at ¶ 4(b).) Exhibit A-1 to the Equipment Purchase Agreement provides that the total purchase price of the Sign is $6,026,000.00. (*Id.*)

In order to finance the purchase and installation of the Sign, on October 26, 2010, GMNY entered into that certain Lease No. 001, dated October 26, 2010 (the "Lease Agreement"), with the Plaintiff. (*Id.*, at ¶ 4(c).) In paragraph 22 of the Lease Agreement, GMNY granted the Plaintiff a security interest in all of its assets and property of any kind or nature whatsoever as security for its obligations under the Lease Agreement. (*Id.*) In connection with the execution of the Lease Agreement, the Defendants signed the Guaranty which is annexed to the Complaint as Exhibit F. (*Id.*, at ¶ 4(d).)

To further secure GMNY's obligations under the Lease Agreement, on or about October 26, 2010:

a.      GMCT entered into a guaranty of all of GMNY's obligations under the Lease Agreement. (*Id.*, at ¶ 4(e).)

b.      GMCT entered into a Pledge and Security Agreement, pursuant to which it, among other things, granted the Plaintiff a lien on, security interest in, and right of setoff against, among other property, general intangibles and "all of the stock, shares,

membership interests, partnership interests and other equity ownership interests in [GMNY] now or hereafter held by [GMCT] (collectively, the "Ownership Interests") and all of [GMCT]'s rights to participate in the management of [GMNY], [and] all rights, privileges, authority and powers of [GMCT] as owner or holder of Ownership Interests in [GMNY] . . . ." (R. 56 Statement, at ¶ 4(f).)

    c.    GMCT executed an Equity Power document, pledging its ownership interest in GMNY. (*Id.*, at ¶ 4(g).)

    d.    The Defendants entered into a Pledge Agreement pursuant to which they, among other things, granted the Plaintiff a lien on, security interest in, and right of setoff against, among other property, "all of the stock, shares, membership interests, partnership interests and other equity ownership interests in [GMCT] now or hereafter held by [the Defendants] (collectively, the "Ownership Interests") and all of [the Defendants]' rights to participate in the management of [GMCT], [and] all rights, privileges, authority and powers of [the Defendants] as owner or holder of Ownership Interests in [GMCT] . . . ." (*Id.*, at ¶ 4(h).)

    e.    The Defendants executed Equity Power documents, pledging their ownership interests in GMCT, which pledge was retained by the Plaintiff. (*Id.*, at ¶ 4(i).)

At various dates after October 26, 2010, the Lease Agreement was amended by the following (the Lease Agreement, as amended, the "Lease Documents"):

    a.    Amendment No. 1 dated June 13, 2010.

    b.    Amendment No. 2 dated July 28, 2011 ("Amendment 2").

    c.    Amendment No. 3 dated September I, 2012.

    d.    Amendment dated as of March 31, 2013 ("Amendment 4").

(*Id*., at ¶ 5(a)-(d).) Pursuant to Amendment 2, in total GMNY borrowed $7,041,952.00 from the Plaintiff, $1,050,000.00 of which was used to fund a security deposit to secure GMNY's obligations to the Plaintiff. (R. 56 Statement, at ¶ 6.) GMNY made payments to the Plaintiff under the Lease Documents totalling $5,522,724.81. (*Id*., at ¶ 7.) Approximately $490,141.82 of this amount was on account of sales taxes paid over by the Plaintiff to the applicable government entities. (*Id*.) In addition, the Plaintiff applied the $1,050,000.00 security deposit to GMNY's obligations under the Lease Documents. (*Id*.)

On its federal and state tax returns, GMNY treated the Lease Documents as a financing arrangement, in that it included the Sign as an asset on its balance sheet, included the amount due under the Lease as a liability on its balance sheet, and claimed deprecation with respect to the Sign. (*Id*., at ¶ 8.)   GMNY provided copies of its federal and state tax returns to the Plaintiff. (*Id*.)

While in its Complaint the Plaintiff alleges that $8,302,118.35 is owed by the Defendants under the Lease Documents, in its internal records and communications the Plaintiff recognized that its net exposure was between $3.8 million and $3.9 million at various times in 2018. (*Id*., at ¶ 11.)  Edward Kitchen, the workout person assigned to the GMNY account, designated by the Plaintiff as a 30(b)(6) witness and identified as a person with knowledge regarding the claims made in the Complaint in responses to interrogatories, was able to give essentially no explanation of the amount that the Plaintiff claims is owed by GMNY beyond the approximately $3.8 figure stated in the foregoing documents when questioned at his deposition. (*Id*.)

The Sign went "live" on June 10, 2010.  In July, 2011, the first of a long series of

system failures with the Sign occurred.  The Sign has experienced dozens of significant technical problems and system failures.  Based on, among other reasons, these system failures, design issues, and increasing competition in the New York City sign market, GMNY was unable to earn sufficient sums from selling advertising on the Sign to service the debt due the Plaintiff and cover operating costs.  Since February, 2015, GMNY has made four payments to the Plaintiff under the Lease Documents. (*Id.*, at ¶ 12.)

Between February, 2015, and October 2, 2018, the Plaintiff did not send a written notice to GMNY that GMNY had failed to pay any Rental Payment (as defined in the Lease Documents) or other amount due under the Lease Documents. (R. 56 Statement, at ¶ 13.)  Monthly invoices that the Plaintiff sent to GMNY from October, 2015 through March, 2018, did not include any amount due for late or default interest. (*Id.*, at ¶ 14.) An aging report that the Plaintiff sent to GMNY in March, 2016, did not include any amount due for late or default interest. (*Id.*, at ¶ 15.)  Prior to October 2, 2018, the Plaintiff never made a demand for payment of late or default interest and never gave GMNY any indication or notice that the Plaintiff asserted that default or late interest was due or accruing. (*Id.*, at ¶ 16.) Until October 2, 2018, the Plaintiff never notified GMNY of the occurrence of an Event of Default under the Lease Documents or sought to exercise it remedies under Paragraph 18 of the Lease Agreement. (*Id.*, at ¶ 17.)

<u>Argument</u>

**A.   SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  In considering a motion for summary judgment, courts resolve all ambiguities and draws all reasonable inferences against the moving party. *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 50 (2d Cir. 2009).  "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law." *Lindsay*, 581 F.3d at 50.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  In the face of insufficient evidence, "there can be 'no genuine issue as to any material fact,' since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

**B.     THE PLAINTIFF IS NOT ENTITLED TO THE LESSOR'S RETURN UNDER THE LEASE DOCUMENTS**

**1.     *The Lease Documents Represent a Financing Transaction, Not a True Lease.***

Fundamentally, "a lease involves payment for the temporary possession, use and enjoyment of goods, with the expectation that the goods will be returned to the owner with some expected residual interest of value remaining at the end of the lease term.  In contrast, . . .  a security interest is only an inchoate interest contingent on default and limited to the remaining secured debt."  James J. White & Robert S. Summers, Uniform Commercial Code vol. 4, sec. 30-3, 14 n.18 (5th ed. West 2002).  Notwithstanding the Plaintiff's representations to the contrary, the transaction entered into between the Plaintiff and GMNY was a secured financing and not a true lease.  The way that the Plaintiff secured its claim here in and of itself evidences that this was intended as a secured financing rather than a true lease—in addition to GMNY's grant of a security interest to the Plaintiff, it received guaranties of all of GMNY's obligations to the Plaintiff from the Defendants and GMCT, which in turn were secured by security interests in and pledges of property of the Defendants and GMCT.  In addition, as noted above, on its federal and state tax returns GMNY treated the Lease Documents as a financing arrangement, in that it included the Sign as an asset on its balance sheet, included the amount due under the Lease as a liability on its balance sheet, and claimed deprecation with respect to the Sign.  The Plaintiff was aware of this tax treatment, as GMNY provided copies of its federal and state tax returns to the Plaintiff.

Further, both the Lease Documents themselves and the traditional analysis under the Uniform Commercial Code ("UCC") former section 1-201(37) confirm that the Lease Documents are not a true lease.  The Lease Agreement provides, at paragraph 23 (R. 56 Statement, at ¶ 18):

> Unless [GMNY] has the right to acquire [the Plaintiff's] interest in the Equipment[3] at the end of the Term[4] for nominal or no additional consideration, the parties intend this [Lease Agreement] to be a true lease and not one intended merely for security.

Furthermore, pursuant paragraph 6(b) of the Lease Agreement, as amended by Amendment 4, "at the end of the Renewal Term, this [Lease Agreement] will terminate and [GMNY][5] will be entitled to [the Plaintiff's] interest in the Equipment for $1." (R. 56 Statement, at ¶ 19.) It is well-settled that "an option price of a dollar is nominal." *PSINet, Inc. v. Cisco Systems Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 45 (Bankr. S.D.N.Y. 2001); *see also Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 348 (1924) (describing one dollar as "nominal consideration"); *Glotzer v.*

---

[3] "Equipment" is defined as the subject 6,010 square foot Mediamesh sign that was installed on the Port Authority of New York building in Manhattan. For the purposes of this Motion and to avoid confusion, the Equipment is referred to as the Sign.

[4] "Term" is defined as the total length of the Agreement. (Lease Agreement, at ¶ 4.)

[5] Paragraph 6(b) of the Lease Agreement, as amended by Amendment 4, contains a scrivener's error in that it reads "Lessor will be entitled to Lessor's interest in the Equipment for $1." This is nonsensical and the only logical reading of the subject section is "[GMNY] will be entitled to [the Plaintiff's] interest in the Equipment for $1." *See generally Park Irmat Drug Corp. v. OptumRx, Inc.*, 152 F. Sup. 3d 127, 135 (S.D.N.Y. 2016) ("Courts may as a matter of interpretation carry out the intention of a contract by transposing, rejecting, or supplying words to make the meaning of the contract more clear . . . in those limited instances where some absurdity has been identified or the contract would otherwise be unenforceable either in whole or in part." (quotation and citation omitted)). Indeed, in earlier versions of paragraph 6(b), the Lease Documents provided for the Plaintiff to transfer the Sign to GMNY. (*See* Exhibit A to Exhibit 2, at ¶ 6(v) ("…this Lease will terminate and Lessor will transfer the Equipment to Lessee for $1."); Exhibit B to Exhibit 2, at ¶ 6(vii) ("… this Lease will terminate and Lessor will transfer the Equipment to Lessee for $1.")

*Glotzer*, 111 Misc. 2d 171, 173, 443 N.Y.S.2d 812 (Sup. 1981) (same).  Because GMNY had the option to purchase the Sign for nominal consideration, the plain language of the Agreement provides that this was a secured financing transaction and not a true lease.

Beyond the plain language of the Agreement, an analysis under the UCC confirms that the arrangement between the Plaintiff and GMNY was a secured financing transaction rather than a true lease. N.Y. U.C.C. Law § 1-201(37) governs the distinction between a true lease and an instrument designed to create a security interest.[6] Section 1-201(37) provides:

> (a)  Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:
>
> (i)    the original term of the lease is equal to or greater than the remaining economic life of the goods,
>
> (ii)   the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
>
> (iii)  the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
>
> (iv)  the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

---

[6] The law of the state of New York governs the Lease Documents. (R. 56 Statement, at ¶ 20.) While Section 1-201(37) was revised in December of 2014 and the relevant provisions moved to Section 1-203, only transactions entered into after December 17, 2014, are governed by Section 1-203. (2014 N.Y. Sess. Laws § 51 (McKinney).) Because the Agreement was entered into prior to December of 2014, this matter will be analyzed under the former Section 1-201(37).

Courts described this as "a two-prong 'Bright Line Test' that, if satisfied, calls for the lease to be recharacterized as a secured transaction." *Fangio v. Vehifax Corp. (In re Ajax Integrated, LLC)*, 554 B.R. 568, 578 (Bankr. N.D.N.Y. 2016).

With respect to the Lease Agreement, the first prong of the Bright Line Test is satisfied in that paragraph 5 of the Lease Agreement states that it "is noncancelable during its Term … ." (R. 56 Statement, at ¶ 21.)  Moreover, the only manner in which GMNY would be released from its obligations under the Agreement is following the payment of all amounts due thereunder and the selection of one of three End of Term options as provided by paragraph 6, as amended by Amendment 4.  The agreement provides no mechanism by which GMNY could prematurely terminate the Agreement. Courts regularly hold that when an agreement cannot be terminated "without paying all amounts then due and those that would become due, including the [purchase option]," the first prong of the Bright Line Test is satisfied.  *Fangio*, 554 B.R. at 579; *In re PSINet, Inc.*, 271 B.R. at 44 (holding that because Debtor could not terminate the agreement without incurring an obligation to creditor for the full cost of the equipment, including the "buyout payment," the first prong of the Bright Line Test under UCC § 1-201(37) was satisfied).  There is no question the first prong of the Bright Line Test is met.

The second prong of the Bright Line Test presents four "mutually exclusive factors… referred to by many courts as the 'residual factors.'" *Fangio*, 554 B.R. at 579. "If any one of the four residual factors are met then the agreement is recharacterized as a secured transaction as a matter of law. *In re Uni Imaging Holdings, LLC*, 423 B.R. 406, 416 (Bankr. N.D.N.Y. 2010)." *Id.*

14

At a minimum, the Lease Agreement in the instant matter satisfies Section 1-201(37)(a)(iv) in that GMNY had the option of buying any interest the Plaintiff had in the Sign for one dollar, pursuant to paragraph 6(b) as modified by Amendment 4. As noted above, one dollar is "nominal additional consideration" for the purposes of Section 1-201(37)(a)(iv).  *PSINet, Inc.*, 271 B.R. at 45 ("It is well established that an option price of a dollar is nominal within the meaning of [the UCC] and where such an amount is agreed to, there is no need to delve into an analysis of the economic sensibility of purchasing the equipment for that price").

The Agreement meets both prongs of the Bright Line Test and thus constitutes "a secured transaction as a matter of law." *Fangio*, 554 B.R. at 579.

**2.**      ***The Plaintiff is not entitled to collect the Lessor's Return in this secured financing transaction.***

In paragraph 22 of the Complaint, the Plaintiff claims that the Defendants are in default of their obligations under the Guaranty for failing to pay the "Lessor's Return," among other amounts.   In paragraph 15 of the Complaint, the Plaintiff claims it is entitled to the "Lessor's Return" pursuant to paragraph 18(d) of the Lease Agreement, which provides (R. 56 Statement, at ¶ 22):

> **If an Event of Default is continuing, … [the Plaintiff] may in its absolute discretion and with notice to [GMNY] exercise any one or more of these remedies:**
> **…**
> **(d) Require [GMNY] to pay the Lessor's Return, calculated by [the Plaintiff] as of the date of [the Plaintiff's] demand, and upon [the Plaintiff's] full receipt of the Lessor's Return as a result of [the Plaintiff's] demand under this section, plus all other amounts outstanding under this Lease, this Lease will terminate *and [the Plaintiff] will transfer to [GMNY] any Equipment still in [GMNY's]  possession*.**

**(Emphasis added).   Paragraph 19 of the Lease Agreement provides in part (R. 56 Statement, at ¶ 23):**

> **Lessor's Return.  Lessor may become entitled to the Lessor's Return, which shall be Lessor's anticipated benefit of its bargain and profit from this Lease transaction (to which it will specifically be entitled).  The Lessor's Return, as stipulated to herein, includes amounts attributed by the parties to (and a loss to Lessor upon a Loss or Event of Default is dependent in part upon) unpaid Rental Payments to become due, *the original cost of the Equipment and Soft Cost Items to Lessor, the unrealized anticipated value of the Equipment to Lessor,* [and] the future observance by Lessee of its nonrental Lease obligations for the benefit of Lessor.**

**(Emphasis added).**

**By its very title and its plain language, the concept of "Lessor's Return" was intended to be applicable only in true lease situations—by the very terms of paragraph 18(d), there is a mutual exchange that is to take place—GMNY pays money and the Plaintiff transfers any equipment to GMNY.  But here, no such exchange could take place because this was not a true lease transaction, the Plaintiff never owned the Sign and never had anything to transfer to GMNY.  The definition of Lessor's Return in paragraph 19 includes things—the original cost of the sign to the Plaintiff, the unrealized anticipated value to the Plaintiff of the Sign—that simply are not applicable here.  In fact, John Zimmeth, an employee of the Plaintiff and the person principally responsible for the transaction into 2018, testified at his deposition that the Plaintiff sometimes used the same master agreement for both true lease and financing transactions, and that depending on whether a particular transaction was a true lease or a financing, not all of the provisions of the Plaintiff's master agreement were applicable. (R. 56 Statement, at ¶ 10.) He testified that in a finance transaction, the residual value,**

fair market value, and transfer of equipment component of Lessor's return are not applicable. (*Id.*)

The Plaintiff used its standard form document, which it used in both true lease and financing transactions, in this transaction.  As Mr. Zimmeth testified, some provisions of the standard form document are not applicable in financing transactions. There is no genuine issue as to any material fact that this was a financing transaction, and there is no genuine issue as to any material fact that the "Lessor's Return" is not applicable in a financing transaction.

## C.   THE PLAINTIFF IS NOT ENTITLED TO TAXES

As noted above, the basis for the Plaintiff's claimed amount due is opaque, but the Defendants believe that a component of the amount claimed is for unpaid state and local sales taxes.  Under the Lease Agreement, GMNY was responsible to pay all taxes, including state and local sales taxes. (R. 56 Statement, at ¶ 24.)  In August 2010, prior to the closing on the Lease Documents on October 26, 2010, Patty Margin, an employee of the Plaintiff, advised GMNY that state and local sales taxes on the transaction were payable on the monthly payment to be made under the Lease Documents, rather than in a lump sum at the time of the purchase of the sign. (R. 56 Statement, at ¶ 9.) GMNY followed this advice, and believes that approximately $490,000.00 to $500,000.00 of the amount paid to the Plaintiff through February of 2015 was on account of and used by the Plaintiff to pay state and local sales taxes, calculated based on 8.875% of the rent payments made. (*Id.*, at ¶ 7.)

New York Tax Law section 1105(a) imposes sales tax upon "[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this

article."  New York Tax Law section 1132(a) provides that "[e]very person required to collect the tax shall collect the tax from the customer when collecting the price, amusement charge or rent to which it applies."  Where a transaction constitutes a true lease, "New York State and local sales taxes must be collected from the lessee on each of the . . . monthly payments [of rent], at the time of each payment.  . . . [The lessor] must remit the taxes it is required to collect to the Department when filing the sales tax returns that cover the months in question . . . ."  (State of New York Commissioner of Taxation and Finance Advisory Opinion, Petition No. S970806E, annexed hereto as Exhibit A, at 4-5.)  However, "[i]n those instances where the intentions of the parties and the facts and circumstances surrounding . . . [the] transactions clearly establish that such transactions are merely security or financing agreements and that the [lessor] is acting only as a financing agency, the [monthly lease] transactions would not be subject to State and local sales and compensating use taxes.  State and local sales or use taxes would be imposed, however, at the time of the initial sale or use of the equipment in New York State."  (*Id*. at 5.)  For purposes of the New York Tax Law, whether a transaction constitutes a true lease or a security interest is analyzed under the same test under Uniform Commercial Code section 1-201(37) discussed above.  (State of New York Commissioner of Taxation and Finance Advisory Opinion, Petition No. S960708A, annexed hereto as Exhibit B.)

As discussed above, the Lease was not a true lease, it was a financing transaction.  The Defendants owned the Sign throughout.  Accordingly, under the foregoing New York Tax Law, contrary to the advice given to GMNY by the Plaintiff, GKD should have collected state and local sales taxes at the rate of 8.875% at the time the

Sign was purchased and paid for before paying such state and local taxes over to the relevant governmental agencies.  Based on the purchase price of $6,026,000.00, that would have resulted in a tax of $534,807.50.  By incorrectly calculating taxes based on the scheduled payments under the Lease Agreement rather than the purchase price, the Plaintiff would inflate the state and local sales taxes paid by some $400,000.00.

There is no genuine dispute as to any material fact that GMNY paid the great majority of the state and local sales taxes due when correctly calculated.  In addition, GKD as the seller was responsible to collect sales tax, the Plaintiff has no liability for state and local sales tax in connection with this transaction, and the Defendants are entitled to judgment as a matter of law that such sales tax should not be a part of the Plaintiff's claim in this case.

## D.   THE PLAINTIFF IS NOT ENTITLED TO DEFAULT INTEREST

As noted, the basis for the Plaintiff's claimed amount due is opaque, but the Defendants believe that a component of the amount claimed is for default or late interest.

Where a note provides that default interest is payable on demand, interest does not accrue until demand is made or the creditor gives some proper indication to the obligor that it is electing to treat non-payment as a default under note or that it has started charging default interest.  *In re Campbell*, 513 B.R. 846, 851 (Bankr. S.D.N.Y. 2014).

> It is recognized that . . . the Mortgage . . . provided that "[u]pon occurrence of any default hereunder, the Note and all other sums secured hereby shall bear interest at the Default Rate."  As the Second Circuit recently stated, however, this type of a general paragraph has been interpreted by New York cases as "'not self-operative,' intended to simply give the creditor 'the

right to treat the entire debt as matured.'" **U.S. Bank Trust Nat'l Corp. v. AMR Corp. (In re AMR Corp.)**, 730 F.3d 88, 100 (2d Cir. 2013), citing, **Wurzler v. Clifford**, 36 N.Y.S.2d 516, 517 (N.Y. Sup. Ct. 1942), see also **Tymon v. Wolitzer**, 39 Misc.2d 504, 240 N.Y.S.2d 888 (N.Y. Sup. Ct. 1963).

(*Id.* at 852.)

Paragraph 25 of the Lease Agreement provides in part: "Late Performance; Interest Limitations.  Amounts due under this Lease that are not paid within 30 days of their due date will bear interest, *payable on demand*, at the rate of 12% per year, or such lesser rate as may be the maximum legal rate, from their due dates." (R. 56 Statement, at ¶ 25, emphasis added.)  As detailed above and in the 56(a)(1) Statement, the Plaintiff did not give a written notice of non-payment of any Rental Payment until October 2, 2018.[7] (R. 56 Statement, at ¶¶ 13, 16.) Paragraph 17 of the Lease Agreement provides in part: "Default.  It is an 'Event of Default' by Lessee under this Lease if: (a) PAYMENT. Lessee's failure to pay any Rental Payments or other amount under this Lease when due continues for 10 days *after notice*."  (R. 56 Statement, at ¶ 26, emphasis added.) Thus, there was no event of default under the Lease Documents prior to October 2, 2018.  Monthly invoices and an aging report that the Plaintiff sent to GMNY in March, 2016, did not include any amount due for late or default interest. (*Id.*, at ¶¶ 14-15.) Prior to October 2, 2018, the Plaintiff never made a demand for payment of late or default interest and never gave GMNY any indication or notice that the Plaintiff asserted that default or late interest was due or accruing. (*Id.*, at ¶ 16.) Accordingly, the Defendants are entitled to judgment as a matter of law that default interest did not accrue prior to October 2, 2010, on any amounts due under the Lease Documents.

---

[7] Pursuant to Section 28 of the Lease Agreement, a notice of default under section 17 was

E.    CONCLUSION

Based on the Local Rule 56(a)(1) filed contemporaneously with this memorandum and the motion, and for the reasons stated herein, the Defendants request that the Court grant the Motion; enter an order that the Plaintiff is not entitled to the Lessor's Return, any amount for state and local taxes and default interest prior to October 2, 2010; and grant the Defendants such other and further relief as is just.

GARETT ALAN NEFF ALSO KNOWN AS GARY NEFF, JOHN MARK SCHMID AND DAVID KARL SCHMID

 /s/ Eric A. Henzy
Eric A. Henzy (ct12849)
Christopher H. Blau (ct30120)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234
Email: ehenzy@zeislaw.com
            cblau@zeislaw.com

required to be in writing and delivered to GMNY's address.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 26, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


_ /s/ Eric A. Henzy_
Eric A. Henzy (ct12849)

22