# EXHIBIT B

**New York State Department of Taxation and Finance**

# Taxpayer Services Division
# Technical Services Bureau

TSB-A-96 (68) S
Sales Tax
October 10, 1996

STATE OF NEW YORK

COMMISSIONER OF TAXATION AND FINANCE

<u>ADVISORY OPINION</u>          <u>PETITION NO. S960708A</u>

On July 8, 1996, the Department of Taxation and Finance received a Petition for Advisory Opinion from Cantor Fitzgerald Securities, One World Trade Center, New York, New York 10048. Petitioner, Cantor Fitzgerald Securities, submitted additional information pertaining to the Petition on August 8, 1996.

The issue raised by Petitioner is whether the proposed transaction described herein constitutes a security or financing agreement and as such is not subject to State and local sales and compensating use taxes.

Petitioner submits the following facts as the basis for this Advisory Opinion.

Petitioner, a New York general partnership, wants to enter into a proposed transaction in order to obtain financing proceeds without any corresponding increase in liabilities on its balance sheet. Consummation of the transaction will allow a reduction of fixed assets and an increase in cash (or liquid assets) for purposes of the rules of the Securities and Exchange Commission. Since Petitioner is subject to regulatory capital requirements based on its GAAP financial statements, the financial statement effects of the proposed transaction are particularly important. The proposed transaction will not contravene any regulatory requirement to which Petitioner is subject.

Petitioner currently has items of furniture, computer equipment, communication equipment, office equipment and other equipment (collectively referred to as "Equipment"). This Equipment is located at Petitioner's headquarters in New York City. Petitioner is the owner of the Equipment for financial reporting purposes in accordance with generally accepted accounting principles ("GAAP") and for federal income tax purposes. Petitioner currently claims recovery and depreciation deductions relating to the Equipment for such purposes. At the time of the acquisition of the Equipment, Petitioner paid all applicable New York State and local sales and use taxes.

In accordance with the proposed transaction, Petitioner will sell the Equipment for a fixed amount ("Lessor's Cost") to a commercial lender ("Lender/Lessor") pursuant to a bill of sale. The Lender/Lessor will be unrelated to Petitioner. The Lessor's Cost will be an amount equal to Petitioner's financial statement book value for the Equipment, without regard to the Equipment's fair market value. The bill of sale will transfer all of Petitioner's rights, title and interest in and to the Equipment and will assign all of Petitioner's rights and interest in and to all manufacturer warranties, parts service policies and guarantees provided by the manufacturers of the Equipment in each case to the Lender/Lessor. For commercial law purposes, the Lender/Lessor will not view itself as the owner of the Equipment, but as a secured party.

After the transfer, the Lender/Lessor will "lease" the Equipment to Petitioner for an initial term of one year pursuant to a Lease Agreement. However, the lease payments will correspond to payments amortizing the principal and interest of a debt obligation. The principal amount of that debt obligation will equal the Lessor's Cost. At the end of the initial lease term or any renewal lease term, Petitioner may either renew the lease for an additional term of one year (six months in the case of the last renewal term), or return the Equipment to the Lender/Lessor or purchase the Equipment. The sum of the initial term and all renewal terms may not exceed 42 months.

For financial reporting purposes under GAAP, Petitioner and the Lender/Lessor will treat the lease as an operating lease. That is, the Lender/Lessor will include the Equipment on its balance sheet and Petitioner will include only the lease payments as accrued in its income statement. (Petitioner will also disclose in a footnote its future operating lease rentals.) For federal income tax purposes, however, the lease will be treated as a financing arrangement, and Petitioner will continue to be treated as the owner of the Equipment and will continue to claim depreciation and recovery deductions with respect to the Equipment.

A definitive Lease Agreement has not yet been fully negotiated. However, Petitioner has included as part of its Petition copies of a Summary of Principal Terms and Conditions and a draft of the Lease Agreement.

Applicable Law and Regulations

Section ll01(b) of the Tax Law provides in part:

When used in this article for the purposes of the taxes imposed by subdivisions (a), (b), (c) and (d) of section eleven hundred five and by section eleven hundred ten, the following terms shall mean:

*             *             *

(4) Retail sale. (i) A sale of tangible personal property to any person for any purpose, other than (A) for resale as such or as a physical component part of tangible personal property ....

(5) Sale, selling or purchase. Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume ... conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor ....

(6) Tangible personal property. Corporeal personal property of any nature ....

Section ll05(a)of the Tax Law imposes sales tax on:

The receipts from every retail sale of tangible personal property, except as otherwise provided in this article.

Section 526.7(c)(3) of the Sales and Use Tax Regulations, in defining "sale, selling or purchase," recognizes that certain leases entered into merely as security agreements are not sales within the meaning of the Tax Law.

Section 1-201(37) of the New York Uniform Commercial Code provides, in part:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation .... Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that:

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

TSB-A-96 (68) S
Sales Tax
October 10, 1996

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37):

(a) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(b) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and

(c) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

Section 2-104(2) of the Uniform Commercial Code provides:

"Financing agency" means a bank, finance company or other person who in the ordinary course of business makes advances against goods or documents of title or who by arrangement with either the seller or the buyer intervenes in ordinary course to make or collect payment due or claimed under the contract for sale, as by purchasing or paying the seller's draft or making advances against it or by merely taking it for collection whether or not documents of title accompany the draft. "Financing agency" includes also a bank or other person who similarly intervenes between persons who are in the position of seller or buyer in respect to the goods (Section 2-107).

Opinion

As a general rule, the (leaseback) resale of tangible personal property by the Lessor/purchaser to the Lessee/seller constitutes a taxable retail sale (see, Peat, Marwick, Mitchell & Co., Adv Op Commr T&F, May 12, 1982, TSB-A-82(19)S; Technical Services Bureau Memorandum TSB-M-82(5) Revised). However, under certain circumstances a transfer of title as part of a sale and leaseback may not result in the creation of a sales tax liability (see id).

TSB-A-96 (68) S
Sales Tax
October 10, 1996

In determining whether the proposed sale and leaseback agreement between Petitioner and the Lender/Lessor will constitute a security or financing agreement and as such would not subject the lease payments to State and local sales and compensating use taxes (20 NYCRR 526.7(c)(3)), the "pivotal issue" is to ascertain whether the Lender/Lessor will be acting as a financing agency or as a buyer and subsequent seller of the subject Equipment. The proper method for analyzing the proposed transaction is to look through the form of the agreement and to examine the intent of the parties and the facts and circumstances that will exist at the time of the agreement. (See, Sherwood Diversified Services. Inc., Debtor, 382 F. Supp. 1359; Clayton Funding Corporation, Tax App Trib, July 8, 1993, TSB-D-93(31)S; Eastman Kodak Company, Adv Op Commr T&F, March 12, 1990, TSB-A-90(8)S; General Electric Capital Corporation, Adv Op Commr T&F, April 4, 1994, TSB-A-94(14)S.)

In Sherwood, the Court found that certain equipment leases and, in some instances, sale and leaseback arrangements were simply financing agreements in the forms of leases intended as security. The Court initially looked to the definition of "security interest" as found in Section 1-201(37) of the New York Uniform Commercial Code (UCC) to draw a distinction between a true lease that is taxable for sales tax purposes and a lease intended as security. This definition has since been amended.

For the reasons stated below, for sales tax purposes it is concluded that the proposed transaction does not constitute an outright purchase by the Lender/Lessor with a taxable leaseback to Petitioner. Rather the transaction appears to fall within the scope of a "security interest," as defined in Section 1-201(37) of the UCC. However, a determination as to whether or not the requirements of Article 9 of the UCC have been satisfied in the proposed transaction is beyond the scope of this Advisory Opinion.

Petitioner indicates that pursuant to the proposed transaction, as the lessee, it will have no right to terminate the lease, which accords with the first requirement of the first paragraph of Section 1-201(37) of the UCC. Section 11 of the draft Lease Agreement does, however, afford Petitioner options to renew the initial term or renewal terms of the lease, or to purchase or return the Equipment on the date of expiration of the initial lease term or renewal lease terms. As a general matter, the existence of options to renew or purchase do not in themselves create a security interest (see clauses (c) and (d) of the second paragraph of Section 1-201(37) of the UCC).

Petitioner also indicates that, although not legally bound to become the owner, Petitioner will be economically compelled to become the owner of the Equipment in accordance with clause (b) of the first paragraph of Section 1-201(37) of the UCC. Furthermore, as provided by clause (d) of such paragraph, Petitioner will have an option to become the owner of the Equipment for nominal additional consideration upon compliance with the lease. Pursuant to Section 11.2 of the draft Lease Agreement, Petitioner may exercise a purchase option to purchase all, but not less than all, of the Equipment at the end of the initial lease term or at the end of any renewal lease term, provided Petitioner gives the Lender/Lessor at least 60 days prior notice. If Petitioner elects to exercise

TSB-A-96 (68) S
Sales Tax
October 10, 1996

this option, Petitioner will be obligated to pay the Lender/Lessor an amount equal to the sum of: (i)the "Purchase Price," (ii) the "Make-Whole Payment" and (iii) any unpaid rent or other amounts due and payable under the Lease Agreement. The Purchase Price will equal the unamortized principal balance of the debt obligation represented by the Lessor's Cost. Specifically, the Purchase Price will be equal to the product of Lessor's Cost and stated percentages at the end of each initial or renewal term of the lease (i.e., 78.98%, 56.54%, 32.58% and 20.00% at the end of 12-months, 24-months, 36-months and 42-months, respectively). The Make-Whole Payment will be an amount equal to the excess of: (A) the present value of future lease rentals for a specified period computed at an interest rate based on the interest rate of certain Treasury obligations, over (B) the present value of the same future lease rentals computed at the interest rate implicit in the Lease Agreement. The Make-Whole Payment will be designed to reimburse the Lender/Lessor for loss of the investment opportunity (due to changes in interest rates) resulting from the termination of the lease prior to the end of the 42-month maturity.

Alternatively, if Petitioner wants to return the Equipment to the Lender/Lessor pursuant to Section 11.3 of the draft Lease Agreement, Petitioner will be obligated to pay the sum of: (i) the "Deposit" to cover the costs of crating, shipping, storing and refurbishing the Equipment, (ii) the "Termination Fee," (iii) the "Make-Whole Payment," and (iv) and all unpaid rent and other amounts due and payable under the Lease Agreement. The Deposit will be an amount equal to 11 percent of the Lessor's Cost. If Petitioner performs all of the requirements relating to the return of the Equipment (including crating and shipping), the Lender/Lessor, at its sole discretion, may return all or any portion of the Deposit. The Termination Fee will be equal to the product of Lessor's Cost and stated percentages at the end of each initial or renewal term of the lease (i.e., 68.25%, 48.07%, 26.51% and 16.62% at the end of 12-months, 24-months, 36-months and 42-months, respectively). The sum of the Deposit and the Termination Fee at the end of the initial or any renewal lease term will be greater than the corresponding Purchase Price at the same point in time. The Termination Fee and the Deposit are a significant deterrent to Petitioner returning the Equipment at the end of the lease, and Petitioner would not retain the property in return for paying such fees.

Upon return of the Equipment, the Lender/Lessor may retain or dispose of the Equipment. If the Lender/Lessor disposes of the Equipment, it must pay Petitioner the excess of (i) the amount, if any, realized on such disposition over (ii) any amounts then payable by Petitioner to the Lender/Lessor under the lease.

Petitioner summarizes that under the draft Lease Agreement it may purchase the Equipment at a stated amount which may be below fair market value. As an economic matter, the Purchase Price for which Petitioner may obtain the Equipment is less than the sum of the Deposit and Termination Fee amounts. This means that Petitioner can either refuse to purchase the Equipment and pay an amount greater than the Purchase Price and retain nothing of value, or exercise the purchase option and pay a smaller amount and own the Equipment. Thus, Petitioner, by exercising the purchase option, obtains the Equipment and reduces its payment obligations.

TSB-A-96 (68) S
Sales Tax
October 10, 1996

Additional consideration is considered nominal for purposes of Section 1-201(37) of the UCC if it is less than the lessee's reasonably predictable cost of performing under a lease agreement if the option to become the owner is not exercised. Based on the foregoing economic comparison, it appears that the amount that Petitioner will be required to pay to the Lender/Lessor under the draft Lease Agreement if it exercises its purchase option will be less than Petitioner's reasonably predictable cost of performing under the lease if this option is not exercised. The consideration Petitioner must pay to the Lender/Lessor for possession /use of the Equipment is an obligation for the term of the lease not subject to termination by the lessee. This satisfies the mandatory requirement of the first paragraph of Section 1-201(37) of the UCC for finding a security interest. Thus, the proposed draft Lease Agreement satisfies requirements (b) and (d) of such paragraph. Therefore, the transaction is deemed to create a security interest within the meaning of Section 1-201(37) of the UCC. Since Petitioner will have an option to become the owner of the Equipment for a nominal additional consideration within the meaning of Section 1-201(37) of the UCC, the proposed transaction is deemed to create a security interest rather than a true lease.

In addition to determining that the agreement demonstrates a security interest under Section 1-201(37) of the UCC, it is also necessary to determine whether the Lender/Lessor is a "financing agency" and is not a buyer or seller of the Equipment (see Sherwood, supra, at 1363-4). In this regard, the following factors and corresponding sections of Petitioner's draft Lease Agreement and Summary of Principal Terms and Conditions are pertinent.

Pursuant to the Summary of the proposed transaction, the lease will be structured as an operating lease. The Lender/Lessor (who is unrelated to Petitioner) will receive an assignment of and a perfected first security interest in Petitioner's right, title and interest in the Equipment. However, the Lender/Lessor will agree to treat the lease as a finance lease for federal income tax purposes and, therefore, will not claim any recovery or depreciation deductions with respect to the Equipment. In effect, the Lender/Lessor will represent that it will treat Petitioner as the owner of the Equipment for federal income tax purposes. Furthermore, Section 12.1(viii) of the draft Lease Agreement will eliminate the Lender/Lessor's right to indemnification for certain taxes if the Lender/Lessor does not treat the lease as a financing lease for federal income tax purposes.

Moreover, in accordance with this Summary, the proposed transaction will be considered a net lease. Petitioner will be responsible for all costs and expenses relating to the purchase, possession and use of the equipment.

Pursuant to the preamble of the draft Lease Agreement, the Lender/Lessor will agree to purchase the Equipment from Petitioner for the purpose of leasing the Equipment to Petitioner. At the time of the agreement, the Lender/Lessor will not have taken possession of the Equipment and will not intend to take possession of the Equipment; nor will it have any facilities to store the Equipment.

TSB-A-96 (68) S
Sales Tax
October 10, 1996

Section 2(b) of the draft Lease Agreement provides that Petitioner has previously arranged for delivery and installation of the Equipment and that the Lender/Lessor will have no responsibilities or obligations with respect to these arrangements. In fact, the Equipment was acquired by Petitioner in the ordinary course of its business and not in connection with any discussions about the proposed transaction. Petitioner paid all applicable State and local sales taxes on its purchases of the Equipment.

Section 4.3 of the draft Lease Agreement provides that Petitioner, in accordance with this net lease, will be unconditionally obligated to pay rent under any and all circumstances, including damage to or loss of the Equipment.

Section 7.10 of the draft Lease Agreement provides that Petitioner will, at its own expense, keep and maintain the Equipment in proper working order and furnish all parts, mechanisms, devices and servicing required for the Equipment so that the value, condition and operating efficiency thereof will at all times be maintained and preserved (ordinary wear and tear excepted).

Section 7.11 of the draft Lease Agreement provides that Petitioner will obtain and maintain at all times on the Equipment, at its expense, "all-risk" physical damage and comprehensive liability insurance. The coverage of the insurance must at least equal the Liquidated Damages Amount. The Lender/Lessor will be named as an additional insured on the policy.

Pursuant to Section 9.1 and Section 5(i) of the draft Lease Agreement, Petitioner will grant to the Lender/Lessor a first priority security interest in the Equipment, any replacements or substitutions thereof financed with the proceeds of insurance and any proceeds thereof. The Lender/Lessor will perfect its first priority security interest in the Equipment by filing a security instrument pursuant to Article 9 of the UCC.

Section 10.1 of the draft Lease Agreement confirms that Petitioner has selected the Equipment on the basis of its own judgment and acknowledges that the Lender/Lessor is not a manufacturer or vendor of the Equipment. Section 10.1 of the draft also provides that the Lender/Lessor will make no warranties of any kind, express or implied, with respect to the Equipment and that Petitioner will agree to waive all such warranties. Section 10.3 of the draft will, however, assign to Petitioner the Lender/Lessor's rights under all manufacturers', suppliers' and vendors' warranties with respect to the Equipment.

As noted, Section 11 of the draft Lease Agreement provides Petitioner with the options, upon the scheduled expiration of the term of the lease, to return or purchase, for the applicable Purchase Price, all (but not less than all) of the Equipment.   It is also noted that, if Petitioner returns the Equipment, Petitioner will receive any potential gain from a disposition of the Equipment and will bear all of the risk of loss from a decline in value of the Equipment.

The Lender/Lessor, however, will in all cases be made whole in respect of the principal amount of the debt obligation represented by the Lessor's Cost on termination of the lease because the sum of the Deposit and the Termination Fee is always greater than the Purchase Price.

TSB-A-96 (68) S
Sales Tax
October 10, 1996

The lease, including all permitted extensions, will terminate at the end of 42 months, at which time Petitioner will be economically compelled to purchase the Equipment. The average/median estimated useful economic lives of the Equipment extend approximately 1.5 years beyond the scheduled 3.5 year term of the lease, including renewals, with the consequence that the Equipment will have significant useful economic life remaining to Petitioner at the end of the lease.

Section 14 of the lease allows the Lender/Lessor to inspect the Equipment at any reasonable time.

Section 16 of the draft Lease Agreement provides that Petitioner will bear all risk of loss, theft, damage to or destruction of the Equipment or any part thereof. Petitioner, at its own expense, will be obligated to repair or replace the item of Equipment to the condition and repair required by the maintenance provisions in Section 13 of the draft Lease Agreement. Any insurance payment is to be applied to reimburse Petitioner for expenses incurred or, if an event of default exists, to reduce the amounts payable by Petitioner under the lease. Any excess insurance proceeds are to be retained by Petitioner, not by the Lender/Lessor.

Section 19 of the draft Lease Agreement provides for the payment of the Liquidated Damages Amount upon any event of default by Petitioner.      The Liquidated Damages Amount will be equal to the sum of (i) the remaining rental payments, (ii) the Purchase Price and (iii) the Make-Whole Payment. This has the effect of accelerating the remaining payments due under the lease for the entire remaining term.

Section 21 of the draft Lease Agreement provides that Petitioner may not assign or transfer any of its rights under the lease without the prior written consent of the Lender/Lessor. This Section also provides that the Lender/Lessor may at any time, with the prior consent of Petitioner (which consent may not be unreasonably withheld) sell, assign, transfer or grant participation in its rights under the lease to other financial institutions.

The combined effect of these factors supports the conclusion that the proposed transaction between Petitioner and the Lender/Lessor is intended to constitute a security or financing agreement with the Lender/Lessor acting as a financing agency and not as a buyer or seller of the Equipment. Therefore the proposed sale and leaseback will not be subject to State and local sales and compensating use taxes to the extent that the proposed transaction complies with the Summary and draft Lease Agreement and Petitioner's statement of facts.

/s/

DATED: October 10, 1996

John W. Bartlett
Deputy Director
Technical Services Bureau

NOTE:   The opinions expressed in Advisory Opinions
are limited to the facts set forth therein.