# EXHIBIT 13

```
                                                              10:10AM
 1            UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT
 2

 3

 4  HUNTINGTON TECHNOLOGY FINANCE,  )
    INC. f/k/a MACQUARIE EQUIPMENT  )  Civil Action No.
 5  FINANCE, LLC,                   )  3:18-cv-01708(VLB)
            Plaintiffs,             )
 6                                  )
    VS                              )
 7                                  )
    GARRETT ALAN NEFF a/k/a GARY    )
 8  NEFF, JOHN MARK SCHMID, and     )
    DAVID KARL SCHMID,              )
 9          Defendants.             )

10

11

12            DEPOSITION OF:  John Zimmeth
              DATE:           May 6, 2019
13            HELD AT:        Carmody, Torrance,
                              Sandak & Hennessey, LLP
14                            195 Church Street
                              New Haven, Connecticut
15

16

17

18

19

20

21

22       Reporter:  Robin Balletto, RMR, CSR #230

23             Cassian Reporting, LLC
                   21 Oak Street
24           Hartford, Connecticut  06106
                    860-595-7462
25
```

```
 1   APPEARANCES:

 2
        Representing the Plaintiffs:
 3
            Metz Lewis Brodman Must O'Keefe
 4          535 Smithfield Street, Suite 800
            Pittsburgh, Pennsylvania  15222
 5          By:  John R. O'Keefe, Jr., Esq.
            jokeefe@metzlewis.com
 6

 7

 8      Representing the Defendants:

 9          Zeisler & Zeisler, P.C.
            10 Middle Street, 15th Floor
10          Bridgeport, Connecticut  06604
            By:  Eric Henzy, Esq.
11          ehenzy@zeislaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 1 | Q But is that what happened here? | 12:02PM |
| 2 | A No. | 12:02PM |
| 3 | Q So this document came from MacQuarie? | 12:02PM |
| 4 | A That's correct. | 12:02PM |
| 5 | Q And just to walk through -- so the provisions | 12:02PM |
| 6 | you're talking about, I'm going to start at paragraph | 12:02PM |
| 7 | 2 on the first page, on page 1 of 11, and are you | 12:02PM |
| 8 | referring to -- it runs through page 2 and into about | 12:02PM |
| 9 | a third of the way down the first column of page 3. | 12:02PM |
| 10 | A Yes. | 12:02PM |
| 11 | Q Those are the payment provisions? | 12:02PM |
| 12 | A Correct. | 12:02PM |
| 13 | Q And that is nonstandard. That's not what you | 12:02PM |
| 14 | would see in a typical MacQuarie lease document; is | 12:02PM |
| 15 | that correct? | 12:02PM |
| 16 | A That's correct. | 12:02PM |
| 17 | Q And outside of that, just page through this | 12:02PM |
| 18 | quickly, can you tell me any other provisions of this | 12:03PM |
| 19 | that would be nonstandard provisions? | 12:03PM |
| 20 | A I'm not looking at the language to see what | 12:03PM |
| 21 | was -- | 12:03PM |
| 22 | Q Outside -- | 12:03PM |
| 23 | A -- marked up and -- | 12:03PM |
| 24 | Q Fair enough. | 12:03PM |
| 25 | A -- looking between one term -- | 12:03PM |

| | | |
|---|---|---|
| 1 | Q But I'm saying -- | 12:03PM |
| 2 | A -- and the other. | 12:03PM |
| 3 | Q -- the basic structure term of the agreement. | 12:03PM |
| 4 | A Section 22 would be nonstandard. | 12:03PM |
| 5 | Q What part of Section 22 would be nonstandard? | 12:03PM |
| 6 | A Well, virtually all of it. I mean, it's all | 12:03PM |
| 7 | been written for this deal. The display agreement, | 12:03PM |
| 8 | the lease, the maintenance agreement, utilities, back | 12:03PM |
| 9 | office, that would not be in a normal lease. Normally | 12:03PM |
| 10 | we're leasing technology or equipment. It just | 12:04PM |
| 11 | wouldn't be in there. | 12:04PM |
| 12 | Q Okay. | 12:04PM |
| 13 | A Referencing a two-way, you know, none of that | 12:04PM |
| 14 | is standard. | 12:04PM |
| 15 | Q Anything else? | 12:04PM |
| 16 | A Not that comes to mind. | 12:04PM |
| 17 | Q I want to -- okay. In what I'm going to call | 12:04PM |
| 18 | the standard -- so you're pointing to paragraph 22 in | 12:04PM |
| 19 | paragraph 2 as nonstandard provisions in this | 12:04PM |
| 20 | document. In the, albeit small -- would this | 12:04PM |
| 21 | document -- would the standard -- I'm going to | 12:04PM |
| 22 | withdraw all of that. | 12:04PM |
| 23 | Would the standard MacQuarie document, so | 12:04PM |
| 24 | something -- understanding there's specific language | 12:04PM |
| 25 | changes here, and then there's paragraph 2 and 22, but | 12:04PM |

|    |                                                                        |         |
|----|------------------------------------------------------------------------|---------|
| 1  | would the standard MacQuarie document be used in both                  | 12:05PM |
| 2  | leasing transactions and financing transactions?                       | 12:05PM |
| 3  |      A   No.  There's many natures of financing                        | 12:05PM |
| 4  | agreements.  There's installment payment agreements,                   | 12:05PM |
| 5  | and equipment finance agreements, and some are done                    | 12:05PM |
| 6  | under a master lease and schedule.  It depends on the                  | 12:05PM |
| 7  | transaction and what's trying to be accomplished.                      | 12:05PM |
| 8  |      Q   Okay.  So would this standard -- if you were                  | 12:05PM |
| 9  | doing a lease -- sorry.                                                | 12:05PM |
| 10 |          On a finance deal where -- you would                          | 12:05PM |
| 11 | sometimes use this document, the master agreement and                  | 12:05PM |
| 12 | schedule structure?                                                    | 12:05PM |
| 13 |      A   Yes.                                                          | 12:05PM |
| 14 |      Q   Okay.  In a deal where you did a finance and                  | 12:05PM |
| 15 | used the master agreement schedule structure, would                    | 12:06PM |
| 16 | all of the provisions in the master agreement be                       | 12:06PM |
| 17 | applicable the same as if it was a true lease?                         | 12:06PM |
| 18 |              MR. O'KEEFE:  I'll object to the form of                  | 12:06PM |
| 19 |     the question.                                                      | 12:06PM |
| 20 | BY MR. HENZY:                                                          | 12:06PM |
| 21 |      Q   If you don't understand, that's okay.                         | 12:06PM |
| 22 |      A   It's not that I don't understand.  You need                   | 12:06PM |
| 23 | to narrow that because it's way too broad.  What do                    | 12:06PM |
| 24 | you mean?                                                              | 12:06PM |
| 25 |      Q   Okay.  Would --                                               | 12:06PM |

```
 1      A    Like there's sections about fair market value    12:06PM
 2   renewal options, and there's sections about returning    12:06PM
 3   the equipment, and the way they have to return it, and   12:06PM
 4   the shape it needs to be returned in, and who pays for   12:06PM
 5   freight, and in a finance lease none of that would       12:06PM
 6   matter, because they were just buying it.  It depends    12:06PM
 7   on the transaction.                                      12:06PM
 8      Q    So would it be MacQuarie's practice to use --    12:06PM
 9   in a finance deal doing the master schedule structure,   12:07PM
10   that those provisions would stay in there                12:07PM
11   notwithstanding that it wasn't a true lease?             12:07PM
12      A    The idea of having a master lease is for you     12:07PM
13   to do multiple types of schedules within them.  The      12:07PM
14   schedule would be what dictates the terms that matter    12:07PM
15   because the schedule is what determines whether          12:07PM
16   something is a true lease or a finance lease, not the    12:07PM
17   master lease.                                            12:07PM
18      Q    Okay.  So --                                     12:07PM
19      A    So you put terms and conditions in place         12:07PM
20   thinking that you might do multiple types of business    12:07PM
21   with somebody, hoping.                                   12:07PM
22      Q    So you would use -- again, subject to changes    12:07PM
23   like the ones you pointed out here, in a deal where      12:07PM
24   you're using the master lease schedule structure, you    12:07PM
25   would use the form document even if there might be       12:07PM
```

| | | |
|---|---|---|
| 1 | provisions that would be not applicable? | 12:08PM |
| 2 |     A   If we chose to do it as a schedule to a | 12:08PM |
| 3 | master lease, that's a finance lease, it would be the | 12:08PM |
| 4 | same master lease. | 12:08PM |
| 5 |     Q   Okay.  Can you go to paragraph 18.  It's at | 12:08PM |
| 6 | page 7. | 12:08PM |
| 7 |     A   Yes. | 12:08PM |
| 8 |     Q   Paragraph 18D.  If you can read the whole | 12:08PM |
| 9 | paragraph.  Probably that would make sense. | 12:08PM |
| 10 |     A   Yes. | 12:08PM |
| 11 |     Q   Paragraph D, would the concept of lessors | 12:08PM |
| 12 | return be applicable in a finance situation? | 12:09PM |
| 13 |     A   Possibly. | 12:09PM |
| 14 |     Q   How would it be applicable? | 12:09PM |
| 15 |     A   Well, they would still have to pay us the | 12:09PM |
| 16 | remaining amounts due, and there just wouldn't be a | 12:09PM |
| 17 | residual value or fair market value piece. | 12:09PM |
| 18 |     Q   And still looking at D, the lessor, that is | 12:09PM |
| 19 | MacQuarie, now Huntington, wouldn't be transferring | 12:09PM |
| 20 | equipment still in lessee's possession, correct? | 12:09PM |
| 21 |     A   Still in lessee's possession.  What do you | 12:10PM |
| 22 | mean? | 12:10PM |
| 23 |     Q   So if in a finance deal, that last clause, | 12:10PM |
| 24 | MacQuarie wouldn't be transferring because it wouldn't | 12:10PM |
| 25 | have anything to transfer, right? | 12:10PM |

```
 1              MR. O'KEEFE:  Objection to form.  You      12:10PM
 2    can answer.                                          12:10PM
 3              THE WITNESS:  Title is -- in a finance     12:10PM
 4    lease title is in the name of the lessee, and what   12:10PM
 5    would transfer, I guess, would be we would remove    12:10PM
 6    our lien in the case of a payoff.                    12:10PM
 7  BY MR. HENZY:                                          12:11PM
 8       Q    Are you aware that in this lawsuit Huntington 12:11PM
 9  has made demand or asserts approximately $8.3 million  12:11PM
10  is owed?                                               12:11PM
11       A    Yes.                                         12:11PM
12       Q    And who would have done that calculation?    12:11PM
13       A    A combination of Ed Kitchen and in-house     12:11PM
14  counsel.                                               12:11PM
15       Q    So not you?                                  12:11PM
16       A    Not me.                                      12:11PM
17              (Defendants' Exhibit 7, Amendment 1:
18  Marked for Identification.)
19              (Defendants' Exhibit 8, Amendment 2:
20  Marked for Identification.)
21              (Defendants' Exhibit 9, Amendment 3:
22  Marked for Identification.)
23              (Defendants' Exhibit 10, Amendment dated
24  3/31/13:  Marked for Identification.)                  12:14PM
25  BY MR. HENZY:                                          12:14PM
```

```
 1        Q   Mr. Zimmeth, looking at what's been marked as         12:14PM
 2   Exhibit 7, do you know why that amendment was done?            12:14PM
 3        A   My recollection why the amendment was done            12:14PM
 4   was that it took longer to install the sign than was           12:14PM
 5   expected, and there was a delay, and we were giving            12:14PM
 6   them a little more flexibility with which to get it            12:15PM
 7   started.  Costs remained the same.                             12:15PM
 8        Q   Costs meaning the cost of --                          12:15PM
 9        A   The cost of what we were financing.                   12:15PM
10        Q   Were there any other changes that were made           12:15PM
11   that you recall?                                               12:15PM
12        A   Well, a lot of -- everything else had to be           12:15PM
13   changed too.                                                   12:15PM
14        Q   Everything else that primarily was on the             12:15PM
15   payment schedule?                                              12:15PM
16        A   There were some renewals.  There were fixed           12:15PM
17   one-year, two-year, three-year renewals,                       12:15PM
18   two-and-a-half-year, three-and-a-half-year renewals.           12:15PM
19   So the term of the lease was five years.  The term of          12:15PM
20   the underlying agreement between the Port and Garage           12:15PM
21   Media expired at 12/31/18, so this lease would have            12:16PM
22   ended at the end of '16.  So there was renewals                12:16PM
23   done -- they were renewals that were prenegotiated             12:16PM
24   that would need to be adjusted with this new payment           12:16PM
25   structure.                                                     12:16PM
```

| | | |
|---|---|---|
| 1 | Q   Okay.  I'm going to ask you to look at | 12:16PM |
| 2 | Exhibit 8.  Do you remember why that was done? | 12:16PM |
| 3 | A   Yes. | 12:16PM |
| 4 | Q   Why was that? | 12:16PM |
| 5 | A   Because there were cost overruns, and they | 12:16PM |
| 6 | asked us to finance them. | 12:16PM |
| 7 | Q   And you agreed to do that? | 12:16PM |
| 8 | A   We did.  But everything had to be adjusted. | 12:16PM |
| 9 | Q   Okay.  On then on Exhibit 9, why was that | 12:16PM |
| 10 | amendment done? | 12:17PM |
| 11 | A   This amendment was done towards the end of | 12:17PM |
| 12 | '12 to give Garage Media a little bit of breathing | 12:17PM |
| 13 | room because sales were stagnating, and they were | 12:17PM |
| 14 | struggling, and we restructured some of the payments | 12:17PM |
| 15 | there to give them three months to sort of catch their | 12:17PM |
| 16 | breath.  So we lowered the payments to $50,000 for | 12:17PM |
| 17 | three months to let them catch up. | 12:17PM |
| 18 | Q   And then Exhibit 10? | 12:17PM |
| 19 | A   This was an amendment that we did in 2013 at | 12:17PM |
| 20 | the beginning, and it sort of really structured the | 12:17PM |
| 21 | whole thing, and we did it -- two things that we did: | 12:18PM |
| 22 | One, we solved for the amount that -- using $550,000 | 12:18PM |
| 23 | of the security deposit would be in rent, and then the | 12:18PM |
| 24 | rest went to sales tax.  So the 505,166 was using | 12:18PM |
| 25 | $550,000 of security deposit because the sales tax was | 12:18PM |

```
 1                              JURAT

 2

 3          I, JOHN ZIMMETH, do hereby certify that the

 4   foregoing testimony taken on May 6, 2019, is true and

 5   accurate, including any corrections noted on the

 6   corrections page, to the best of my knowledge and

 7   belief.

 8
                              _____
 9                                    [signature]
10                                    JOHN ZIMMETH

11

12

13

14

15          At Bloomfield Hills in said county of Oakland,

16   this  20    day of  June  , 2019, personally

17   appeared JOHN ZIMMETH, and he made oath to the truth

18   of the foregoing corrections by him subscribed.

19

20
                   [signature: Patricia L. Sheldon]
21   Before me, _____ Notary Public

22   My commission expires: April 15, 2023

23
         PATRICIA L. SHELDON
24       Notary Public, State of Michigan
         County of Oakland
         My Commission Expires Apr. 15, 2023
25       Acting in the County of Oakland
```

Cassian Reporting, LLC

TRANSCRIPT CORRECTIONS

REPORTER:   Robin Balletto

CASE:   Huntington Technology Finance, Inc. f/k/a MacQuarie Equipment Finance, LLC
VS
Garrett Alan Neff a/k/a Gary Neff, John Mark Schmid, and David Karl Schmid

| PAGE | LINE | CORRECTION | REASON |
|---|---|---|---|
| 9 | 4 | Workout group | not workup |
| 21 | 8 | bought Varilease | not but |
| 23 | 10 | Rick Lambeer, Garry | spelling |
| 25 | 3 | and Meridien | not or |
| 25 | 10/11 | Varilease | spelling |
| 26 | 23 | leasing technology | not just leasing |
| 26 | 25 } | There appears to be something missing | |
| 27 | 1&2 } | leave the thought is incomplete. I cannot recall. | |
| 31 | 2 | Macquarie | no Cap Q (all places) |
| 33 | 19 | either our | not our either |
| 59 | 24 | Bob? | |
| 62 | 13&14 | Ostroski | spelling |
| 64 | 2 | needed | not needing |
| 64 | 13 | and at | missing word |
| 64 | 14 | to that | missing word |

NAME: John Zimmeth
DATE: 6/14/19 & 6/19/19

| | |
|---|---|
| 1 | TRANSCRIPT CORRECTIONS |
| 2 | |
| | REPORTER:   Robin Balletto |
| 3 | |
| 4 | CASE:   Huntington Technology Finance, Inc. f/k/a |
| | MacQuarie Equipment Finance, LLC |
| 5 | VS |
| | Garrett Alan Neff a/k/a Gary Neff, John |
| 6 | Mark Schmid, and David Karl Schmid |

| PAGE | LINE | CORRECTION | REASON | |
|---|---|---|---|---|
| 69 | 16 | any more | should be two words | |
| 73 | 21 | pass credit | not past | |
| 94 | 11 | Tom? | I don't recall this at all | |
| 100 | 5 | buys equipment? | I don't recall this at all | s/b companies |
| 101 | 12 | Joe no Jill | | |
| 113 | 14 | struggling not shrugging | | |
| 114 | 1 | all by | Missing word | |
| 133 | 12 | wouldn't | not would | |

NAME: John Zimmeth
DATE: 6/19/19

```
 1                CERTIFICATE OF REPORTER
 2        I, Robin Balletto, a Registered Professional
 3   Reporter/Notary Public within and for the State of
 4   Connecticut, do hereby certify there came before me,
 5   on the 6th day of May, 2019, the following named
 6   person, to wit:  JOHN ZIMMETH, who was by me duly
 7   sworn to testify to the truth and nothing but the
 8   truth; that he was thereupon carefully examined upon
 9   his oath and his examination reduced to writing under
10   my supervision; that this deposition is a true record
11   of the testimony given by the witness.
12        I further certify that I am neither counsel for,
13   related to, nor employed by any of the parties to the
14   action in which this deposition is taken; and further,
15   that I am not a relative or employee of any attorney
16   or counsel employed by the parties hereto, nor
17   financially or otherwise interested in the outcome of
18   the action.
19        WITNESS my hand and affixed my seal this 20th day
20   of March, 2019.
21
22                        Robin L. Balletto
23
24                        Robin Balletto, RMR
25        My commission expires:  October 31, 2023
```