**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

**HUNTINGTON TECHNOLOGY FINANCE, INC. f/k/a MACQUARIE EQUIPMENT FINANCE, INC. f/k/a MACQUARIE EQUIPMENT FINANCE, LLC**

**Plaintiff,**

**vs.**

**GARETT ALAN NEFF a/k/a GARY NEFF, JOHN MARK SCHMID, and DAVID KARL SCHMID**

**Defendants.**

**Case No. 3:18-cv-01708-VLB**

**HONORABLE VANESSA L. BRYANT**

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Huntington Technology Finance, Inc. f/k/a Macquarie Equipment Finance, Inc. f/k/a Macquarie Equipment Finance, LLC ("Huntington"), by its attorneys, files the within Brief in Support of its Motion for Summary Judgment (the "Motion") as follows:

## I. FACTUAL BACKGROUND

A complete factual overview is set forth in the accompanying Statement of Undisputed Material Facts, which is incorporated herein by reference. In short, Huntington and Garage Media NY, LLC ("GMNY") are parties to that certain Lease No. 001 dated October 26, 2010 (as amended, the "Lease Agreement"), pursuant to which GMNY leases from Huntington a 6,010 square foot Mediamesh digital signage installation located at the Port Authority Bus Terminal in New York, New

**York (the "Sign"). Lease Agreement (Exhibit B) at p.1.[1] By the terms of that certain Guaranty dated October 26, 2010 (the "Guaranty"), Defendants Garett Alan Neff a/k/a Gary Neff, John Mark Schmid, and David Karl Schmid (collectively the "Guarantors") absolutely and unconditionally guaranteed the full and prompt payment when due of all obligations of GMNY under the Lease Agreement. Guaranty (Exhibit C) at § 2.**

**GMNY is in default under the terms and conditions of the Lease Agreement for failure to make payment when due since March of 2015. Affidavit of John Zimmeth ("Zimmeth Affidavit") (Exhibit A) at ¶ 10. As of July 17, 2019, the amount due to Huntington under the Lease Agreement is $8,962,074.79, exclusive of costs and attorneys' fees (the "Amount Due"). Id. at ¶ 12. Under the Guaranty, Guarantors are responsible for payment of the Amount Due in full, without setoff, counterclaim, or defense. Guaranty (Exhibit C) at §§ 2, 3. Guarantors are also responsible for reimbursement to Huntington in connection with that certain December 11, 2015 Letter of Credit (the "Letter of Credit") for the benefit of Outfront Media Group, LLC ("Outfront"). Letter of Credit (Exhibit I) at p.1. Despite demand, Guarantors have failed to make payment. Huntington filed its Complaint on or about October 15, 2018 (the "Complaint"). Discovery has closed, and there are no genuine issues of material fact. As a result, Huntington seeks summary judgment in its favor pursuant to Fed. R. Civ. P. 56.**

**[1] Each of the exhibits cited to herein are included in the Appendix to the Motion filed contemporaneously herewith.**

## II. STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact, and in making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To survive a summary judgment motion, the opposing party "may not rely on mere speculation or conjecture as to the true nature of the facts". Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted). Instead, the nonmoving party must establish a genuine issue of fact by citing to specific parts of the record. Fed. R. Civ. P. 56(c)(1). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. ARGUMENT

It is undisputed that GMNY has failed to make payment to Huntington when due, and that the Guarantors guaranteed the obligations of GMNY. Accordingly, Guarantors are responsible for payment to Huntington of the Amount Due, plus those sums payable on account of the Letter of Credit. By its terms, the Guaranty is unconditional, and Guarantors waived all defenses to enforcement. Even if that waiver did not exist, Guarantors' specious claims that Huntington interfered with GMNY's use and enjoyment of the sign, or that Huntington otherwise failed to act

**in good faith, is not supported by any evidence. Consequently, and for the reasons more fully set forth below, the Court should grant summary judgment in Huntington's favor.**

**A. Guarantors are required to pay the Amount Due to Huntington, together with all amounts due in connection with the Letter of Credit.**

**The Guaranty, like any written agreement, "is subject to the ordinary principles of contract construction." Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro, 25 N.Y.3d 485, 491 (N.Y. 2015).[2] As such, the Guaranty must be enforced according to the plain meaning of its terms. Id. For Huntington to establish a prima facie case that it is entitled to recover on the Guaranty, it must show: "(1) that it is owed a debt from a third party; (2) that the defendant[s] made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant[s]." Chem. Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994); see also HSH Nordbank AG New York Branch v. St., 421 F. App'x 70, 72 (2d Cir. 2011) (holding that, where a creditor seeks summary judgment upon a written guaranty, "the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee") (citations omitted). As described herein, Huntington satisfies each of these required elements.**

***1. GMNY has failed to make payment when due to Huntington.***

**First, there is no dispute that GMNY has failed to make payment under the Lease Agreement when due. The Lease Agreement requires GMNY to remit rental payments to Huntington in the amount of $135,500.00 per month on or before the**

**[2] The Guaranty is governed by New York law. Guaranty (Exhibit D) at § 9.**

**first day of each month. Amendment No. 4 to Lease Agreement (Exhibit F) at § II; Zimmeth Affidavit (Exhibit A) at ¶ 13. In addition, GMNY is responsible for the payment of all taxes associated with the Sign in the amount of $12,025.63 per month based on a tax rate of 8.875-percent (8.875%). Lease Agreement (Exhibit B) at § 7; Zimmeth Affidavit (Exhibit A) at ¶ 14. The Guarantors admit that payments required under the Lease Agreement were not made to Huntington. Answer (Doc. 24) at ¶ 13; Deposition Transcript of Garrett Alan Neff ("Neff Tr.") (Exhibit K) at 88:9-17. Deposition Transcript of John Mark Schmid ("J. Schmid Tr.") (Exhibit L) at 69:22-25, 85:1-5; Deposition Transcript of David Karl Schmid ("D. Schmid Tr.") (Exhibit M) at 41:21-23.**

**The failure to make payment of any amount when due constitutes an event of default under the Lease Agreement. Lease Agreement (Exhibit B) at § 17. The Zimmeth Affidavit sets forth each component of the Amount Due to Huntington as of July 17, 2019, which includes: (1) past due rent and taxes of $6,568,663.35; (2) interest on past due rent and taxes in the amount of $2,083,161.24; (3) a Lessor's Return of $283,075.00; and (4) interest on the Lessor's Return equal to $27,175.20. Zimmeth Affidavit (Exhibit A) at ¶¶ 16-19. In addition, on or about December 11, 2015, Huntington issued the Letter of Credit for the benefit of Outfront. Letter of Credit (Exhibit I) at p.1. As of December 2018, GMNY failed to make payment when due to Outfront under the terms of a Display Agreement by and between those parties. Outfront letter correspondence (Exhibit J) at p.1; Zimmeth Affidavit (Exhibit A) at ¶ 23. As a result of GMNY's default, Outfront drew on the entire principal balance of the Letter of Credit in the amount of $600,000.00 in or about**

**December 2018. Id. Thus, an additional $600,000.00 is now due from GMNY to Huntington, together with interest in the amount of $39,400.00. Lease Agreement (Exhibit B) at § 25; Zimmeth Affidavit (Exhibit A) at § 25.**

***2. Guarantors unconditionally guaranteed the full and prompt payment of all amounts due and owing by GMNY to Huntington.***

**In pertinent part, Section 2 of the Guaranty provides as follows:**

> **As Guarantor will derive commercial benefit from the provisions of this Guaranty, and in order to induce Macquarie to enter into the Agreements, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor unconditionally guarantees to [Huntington] the full and prompt payment, observance and performance when due of all obligations of [GMNY] arising under the Agreements. This Guaranty is absolute, continuing, unlimited, and independent, and shall not be affected, diminished or released for any reason whatsoever . . .**

**Guaranty (Exhibit C) at § 2 (emphasis added). The guaranteed "Agreements" are:**

> **"any and all of the various agreements, instruments, documents, or other arrangements . . . by [GMNY] in favor of [Huntington] or which [Huntington] may be entitled to the benefit of . . . including any personal property leases, and also including any security agreements, collateral agreements, or other agreements entered into in connection with any of the foregoing . . in connection with a loan, lease, or other financial accommodation made by [Huntington] to or for [GMNY], or in connection with any other transition to which [GMNY] is a party or otherwise bound . . .**

**Id. at § 1 (emphasis added). The Lease Agreement is a guaranteed "Agreement" because it is a personal property lease executed in favor of Huntington pursuant to which Huntington is entitled to the benefit of payment. Similarly, the Letter of Credit falls within the ambit of the Guaranty because it was issued in connection with the Lease Agreement and is otherwise a financial accommodation made by Huntington for the benefit of GMNY. The Guarantors admit that they executed the Guaranty and that a true and correct copy thereof was appended to the**

**Complaint. Neff Tr. (Exhibit K) at 37:3-21; J. Schmid Tr. (Exhibit L) at 23:14-22, 24:1; D. Schmid Tr. (Exhibit M) at 24:22-25; Answer (Doc. 24) at ¶ 11. In light of the foregoing, Guarantors cannot legitimately dispute that they are responsible for payment to Huntington of the Amount Due under the Lease Agreement and for reimbursement in connection with the Letter of Credit.**

**Moreover, under Section 7 of the Guaranty, Guarantors agreed to pay all costs and expenses, including all court costs and legal fees and expenses, incurred by Huntington in connection with the enforcement of the Guaranty. Guaranty (Exhibit B) at § 7. As of the date of the Motion, Huntington has incurred legal fees and costs of $92,283.32. Affidavit of Edward J. Kitchen ("Kitchen Affidavit") (Exhibit N) at ¶ 9. This amount includes sums billed by Huntington's counsel from April 2018 to and including July 2019, with additional amounts to accrue thereafter. Id. at ¶ 15.**

***3. As of the date of the Motion, the sums owed to Huntington have not been repaid by GMNY or the Guarantors.***

**Huntington has made demand for payment of all outstanding sums due. See Notice of Default dated October 2018 (Exhibit H) at p.1; Letter of Credit Demand dated January 2019 (Exhibit S) at p.1. Despite demand, GMNY and the Guarantors have failed and/or otherwise refused to repay the Amount Due or to reimburse Huntington on account of the Letter of Credit. Zimmeth Affidavit at ¶¶ 12, 26. The Guarantors do not contend that payments have been tendered to Huntington since GMNY's last payment in 2015, nor could they.**

**Therefore, because: (1) GMNY has failed to make payment to Huntington when due; (2) Guarantors unconditionally guaranteed payment of the amounts**

**more fully described in Subsections 1 and 2 above; and (3) said amounts remain due as of the date of the Motion, this Court should grant summary judgment in Huntington's favor and against the Guarantors in the principal amount of $9,693,758.11, plus continuing interest, fees, and costs. See 136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc., 644 F. App'x 10, 12 (2d Cir. 2016) (holding that summary judgment was properly entered against guarantor where it guaranteed "absolutely, unconditionally and irrevocably . . . each and every one of the liabilities and obligations" of the primary obligor); HSH Nordbank, 421 F. App'x at 73 (granting summary judgement in favor of creditor where it demonstrated that the guaranties at issue were unconditional, events of default occurred, and guarantors refused to make payment after demand); Chase Manhattan Bank, N.A. v. Lassiter, 1993 WL 54442, at *1 (S.D.N.Y. Feb. 26, 1993) (in action to enforce personal guaranty, holding that bank was entitled to summary judgment in its favor where, inter alia, guarantors failed to adduce creditable evidence that amount claimed was not properly calculated and due).**

**B. Guarantors have failed to raise a viable defense to nonpayment.**

**The Guarantors have raised three primary defenses to Huntington's enforcement of the Guaranty: (1) Huntington interfered with GMNY's right to quiet use and enjoyment of the Sign; (2) Huntington breached its duty of good faith and fair dealing; and (3) Huntington failed to act in a commercially reasonable manner. Each of these putative defenses is barred as a matter of law and fact, and summary judgment in favor of Huntington is appropriate.**

***1. The Guaranty is unconditional, and Guarantors waived all affirmative defenses, setoffs, and counterclaims.***

**By executing the Guaranty, the Guarantors "unconditionally" guaranteed the full and prompt payment of all amounts due from GMNY to Huntington. Guaranty (Exhibit B) at § 2. Guarantors' obligations to Huntington are "absolute, continuing, unlimited, and independent, and shall not be affected, diminished, or released for any reason whatsoever . . ." Id. Furthermore, Guarantors waived "demand, protest or notice of any default or nonperformance by [GMNY], [and] all affirmative defenses, offsets and counterclaims against [Huntington] . . ." Id. at § 3. Because Guarantors expressly agreed that their guarantee of GMNY's obligations to Huntington was absolute and without setoff of any kind, their defenses fail as a matter of law.**

**Federal courts have consistently held that, under New York law, "unconditional guaranties . . . [may] foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims." First New York Bank for Bus. v. DeMarco, 130 B.R. 650, 654 (S.D.N.Y. 1991). For instance, in Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., the Second Circuit Court of Appeals found that a guaranty which defined the guarantor's obligations as "unconditional and irrevocable, irrespective of . . . any other circumstances which might otherwise constitute a legal or equitable discharge [or] defense" had the effect of waiving all legal or equitable defenses raised by the defendants. 188 F.3d 31, 36 (2d. Cir. 1999). In HSH Nordbank, the defendants/guarantors asserted various affirmative defenses to the creditor's guaranty enforcement action, including breach of the covenant**

**of good faith and fair dealing and frustration of purpose. 421 F. App'x at 73. The guaranty before the court contained a waiver of defenses which provided that guarantors' obligations were "absolute and unconditional." Id. Consequently, the Second Circuit concluded that defendants/guarantors failed to raise a cognizable defense to the plaintiff's guaranty enforcement action. Id.**

**Other cases are in accord. In Citizens Fid. Bank & Tr. Co. v. Coulston Int'l Corp., defendants "absolutely and unconditionally guarantee[d] . . . the due and punctual payment . . . of any and all existing and future credits of every kind, nature and character . . ." 160 A.D.2d 1110, 1111 (N.Y. App. Div. 1990). Accordingly, the court held that defendants' claim that the guarantees were fraudulently induced was improper as "the guarantees are, by their terms, absolute and unconditional and a guarantor may not vary the terms and conditions of an integrated, unconditional guarantee based upon claimed oral understandings . . ." Id. (internal quotations and citations omitted). Noting that "[g]uaranties that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims . . . have been consistently upheld by New York courts," the court in Navarro concluded that the defendants' defenses were barred by the "absolute and unconditional" language of the guaranty agreement. 25 N.Y.3d at 493 ("because defendants had assured the banks that their guaranty to pay the loan was not subject to any defenses, they were bound to their promise"). And in DeMarco, the district court found that unconditional**

**guarantees utilized in commercial transactions are presumptively enforceable and do not violate public policy. 130 B.R. at 654.[3]**

**In the instant case, the Guaranty is unconditional, the obligations thereunder are absolute, and Guarantors expressly waived any defenses to enforcement. Although the Guarantors have ostensibly chosen to ignore the broad waivers set forth in the Guaranty, they cannot overcome the agreement's clear and unambiguous language. Numerous courts previously faced with substantially similar facts have concluded that, where the guarantors have executed an unconditional guarantee agreement that waives all defenses, the creditor is entitled to payment irrespective of any arguments made by the guarantors in opposition thereto. The result here should be no different. The Guaranty means what it says and says what it means: Guarantors' obligations are unconditional, and they are not entitled to raise any defense, offset, or counterclaim. Therefore, each of the defenses asserted by the Guarantors necessarily falls, and Huntington is entitled to judgment in its favor.**

---

**[3] See also Citibank, N.A. v. Plapinger, 485 N.E.2d 974, 974 (N.Y. 1985) (holding that language in a guaranty constituted a valid waiver where the express terms of the guaranty stated that it was "absolute and unconditional irrespective of any lack of validity or enforceability of the guarant[y], or any other circumstance which might otherwise constitute a defense"); Sterling Nat'l Bank v. Biaggi, 849 N.Y.S.2d 521, 522 (N.Y. App. Div. 2008) (holding that language was "sufficiently specific to constitute a valid waiver of the right to plead defenses" where the guaranty provided that (1) it was "absolute and unconditional in all respects and enforceable irrespective of any other agreements or circumstances which might otherwise constitute a defense to the guaranty and obligation of the guarantor under the loan agreement" and (2) "the guarantor absolutely, unconditionally and irrevocably waives any and all rights to assert any defense, set-off, counterclaim or cross claim of any nature whatsoever concerning the guarantor's obligations under the guaranty or the loan agreement"); Red Tulip, LLC v. Neiva, 842 N.Y.S.2d 1, 5 (N.Y. App. Div. 2007) ("New York courts have consistently upheld broadly worded waiver language [as to defenses and counterclaims].")**

***2. Guarantors lack standing to assert their defenses, as the complained-of conduct concerns breaches of duties owed to GMNY, not Guarantors.***

**As a general rule, "guarantors in New York do not have standing to assert affirmative defenses properly belonging to the obligor, the party whose obligations the guarantors have guaranteed." Sterling Fin. Servs. Co., v. Franklin, 259 F. App'x 367, 369 (2d Cir. 2008).[4] In the present matter, the Guarantors claim that Huntington breached GMNY's right to quiet enjoyment of the Sign, and that Huntington failed to act in good faith or in a commercially reasonable manner. See Answer (Doc. 24) at ¶¶ 26-49. This complained-of conduct concerns a breach of duties allegedly owed to GMNY under the terms of the Lease Agreement, not obligations due to Guarantors in accordance with the Guaranty. As such, only GMNY can assert the defenses raised in the Answer. For this reason, Guarantors' defenses are without merit.**

***3. There is no evidence that Huntington interfered with GMNY's use of the Sign or otherwise acted unreasonably or in bad faith.***

**Guarantors complain that Huntington interfered with GMNY's quiet use and enjoyment of the Sign in two ways. First, Guarantors allege that Huntington required GMNY to change its sales agent from A2a Media, Inc. ("A2a") to Clear Channel. Answer (Doc. 24) at ¶ 36. Second, Guarantors maintain that Huntington**

**[4] There is a limited exception to this rule where the guarantor exercises sole control over the primary obligor. Id. Based upon their deposition testimony, it is clear that the Guarantors each maintained an interest in GMNY and did not have unilateral control over the company. Thus, the exception does not apply. See id. ("we cannot conclude that [the guarantor] is the sole shareholder of [the primary obligor]. Therefore, [the guarantor] lacks the requisite standing to challenge the judgment of the District Court on the ground that [the creditor] breached its duty to act in good faith under its contract with [the primary obligor] because such an affirmative defense belongs to [the primary obligor], not to [the guarantor]")**

**prevented GMNY from filing suit against GKD-USA, Inc. ("GKD"), the Sign's manufacturer, as a result of the Sign's repeated technical failures. Id. at ¶ 37.[5] Guarantors also make broad assertions that Huntington did not act in good faith or in a commercially reasonable manner. Id. at ¶¶ 46, 49. To defeat the Motion, Guarantors must "raise the existence of specific facts showing that there is a genuine issue for trial", and the "mere existence of a scintilla of evidence" or "conclusory statements, devoid of specifics" are insufficient. Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017), appeal dismissed 2017 WL 5054221 (2d Cir. June 27, 2017). Here, there is no evidence in the record to support Guarantors' assertions regarding A2a and Clear Channel, legal action against GKD, or any other bad faith conduct. Accordingly, Huntington's request for summary judgment should be granted.**

**To begin, Guarantors' position that Huntington forced GMNY to change its sales agent is bellied by Guarantors' own testimony and records. In late-2013, GMNY retained Field Activate to evaluate the current marketing strategy in connection with the Sign, including A2a's performance as sales agent. Neff Tr. (Exhibit K) at 143:1-25, 144:1-23; Field Activate Brand Research Immersion**

---

**[5] Guarantors also make the blanket assertion that Huntington "exercised a high-degree of control over GMNY's day-to-day operations." Answer (Doc. 24) at ¶ 39. When asked to elaborate on this allegation, Mr. Neff cited only two examples: (1) pressure to change sales agents from A2a to Clear Channel; and (2) sharing "confidential information" with the Port Authority of New York-New Jersey and Clear Channel relating to the cost associated with buying out the Lease Agreement. Neff Tr. (Exhibit K) at 189:1-10; 192:19-25. As more fully described below, the record evidence is clear that GMNY, not Huntington, made the decision to fire A2a and retain Clear Channel. As to the alleged sharing of confidential information, Mr. Neff conceded that Huntington is permitted to sell the Lease Agreement if it so chooses. Id. at 189:15-17. Thus, disclosure of information regarding the buyout price is well within Huntington's rights.**

**Program report (the "Field Activate Report") (Exhibit O) at p.2, Among other things, Field Activate concluded that A2a had very little visibility in the New York, New York market and that its sales efforts were deficient. Field Activate Report (Exhibit O) at p.13. As a result, Field Activate recommended that GMNY terminate its relationship with A2a. Id. at p.29. Field Activate further advised GMNY that it should develop an RFP process to help select potential firms to act as sales agent. Id. GMNY agreed with this recommendation and proceeded to create an RFP document as suggested. Neff Tr. (Exhibit K) at 150:3-14.**

**Field Activate's conclusions with respect to A2a were consistent with GMNY's own observations regarding its sales agent's failure to perform as expected. Since the Sign went live, A2a had consistently failed to reach its sales projections Id. at 124:3-15. By way of example, for the sales period commencing July 1, 2011 and ending December 31, 2011, the minimum sales goal was $1,710,000, but actual sales totaled only $1,456,000. Letter correspondence from GMNY to A2a dated January 10, 2012 (Exhibit P) at p.1. GMNY was understandably dissatisfied with A2a's sales efforts, and urged A2a to institute corrective measures. Id. When A2a failed to meaningfully increase sales figures, GMNY elected to convert A2a to a non-exclusive sales agent. Letter correspondence from GMNY to A2a dated June 26, 2012 (Exhibit Q) at p1. Notwithstanding, A2a continued to underperform.**

**After the RPF process began, GMNY received proposals from various ad agencies, including Clear Channel, A2a, Big Outdoor, and Radiant Outdoor. Id. at 152:9-15. Ultimately, Clear Channel and A2a were invited to make presentations to**

**GMNY. Id. at 157:7-15. The decision to invite Clear Channel and A2a to present was made by GMNY with advice from Field Activate; Huntington was not involved. Id. Most importantly, the final decision to terminate A2a and retain Clear Channel was made by GMNY's principals, and them alone:**

> **Q: Okay. And among the representatives of Garage-Media, did each of you choose to pick Clear Channel?**
>
> **A: Given the -- the answer is, yes; and we got on the bandwagon of the program. I mean, we understood we had to make a change. Of those options, we felt Clear Channel was the best option of the competitive set if we are going to leave A2a behind.**

**Id. at 159:6-12 (emphasis added). On or about March 23, 2014, GMNY terminated its agreement with A2a. Letter correspondence from GMNY to A2a dated March 23, 2014 (Exhibit R) at p.1. In GMNY's own words, A2a was terminated not because Huntington required it, but because A2a had utterly "failed to build the sales team or achieve the annual sales objectives both projected by [A2a] and required to support this project." Id. Thereafter, GMNY proceeded to formalize its new partnership with Clear Channel. Huntington did not participate in the negotiation of GMNY's agreement with Clear Channel. Neff Tr. 160:3-9.**

**Likewise, Guarantors' assertion that Huntington prevented GMNY from instituting a lawsuit against GKD is contradicted by the record. Mr. Neff testified during his deposition that GMNY "never" considered a lawsuit against GKD. Id. at 70:6-8, 22-23. Mr. Neff offered testimony both in his individual capacity and as the designee of GMNY pursuant to Fed. R. Civ. P. 30(b)(6). Id. at 8:2-9. As such, his testimony is binding on GMNY. See Sabre v. First Dominion Capital, LLC, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A 30(b)(6) witness testifies as a**

**representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity."). Because GMNY never intended to sue GKD in the first place, Guarantors' claim that Huntington prevented suit from being filed is nonsensical.**

**Finally, Guarantors' contention that Huntington breached its duty of good faith and/or that Huntington failed to act in a commercially reasonable manner is wholly unsupported. A party acts in bad faith where it displays a lack of diligence, willfully renders imperfect performance, or interferes with or fails to cooperate with the other party's performance. RESTATEMENT (SECOND) OF CONTRACTS § 205 cmts. a, d. There is no evidence whatsoever that Huntington engaged in such conduct. To the contrary, Mr. Neff testified that John Zimmeth, on behalf of Huntington, "was doing the right thing for [Huntington]. I think he was trying his best to maneuver the situation, and he was sincerely looking at our interest as well." Neff Tr. (Exhibit K) at 186:3-6. In addition, "no obligation of good faith can be implied which would be inconsistent with the other terms of the contractual relationship." Banco Portugues do Atlantico v. Asland, S.A., 745 F. Supp. 962, 972 (S.D.N.Y. 1990) (internal quotations and citations omitted). In other words, it is a not a violation of the duty of good faith (or any similar duty) for Huntington to exercise its contractual right to payment under the Lease Agreement or the Guaranty. In sum, Guarantors have failed to adduce sufficient evidence to prove their defenses. Summary judgment in favor of Huntington is therefore warranted.**

**IV. CONCLUSION**

**For the foregoing reasons, Plaintiff Huntington Technology Finance, Inc. f/k/a Macquarie Equipment Finance, Inc. f/k/a Macquarie Equipment Finance, LLC respectfully requests that this Court grant summary judgment in its favor and against Defendants Garett Alan Neff a/k/a Gary Neff, John Mark Schmid, and David Karl Schmid.**

**Respectfully Submitted,**

**Date: July 26, 2019**

**METZ LEWIS BRODMAN MUST O'KEEFE LLC**

**By: *****/s/ Justin M. Tuskan***
**John R. O'Keefe, Jr. (phv00948)**
**Justin M. Tuskan (phv00926)**
**535 Smithfield Street, Suite 800**
**Pittsburgh, PA 15222**
**Phone: (412) 918-1100**
**Fax: (412) 918-1199**
**jokeefe@metzlewis.com**
**jtuskan@metzlewis.com**
***Attorneys for Plaintiff Huntington Technology Finance, Inc.***

**- and -**

**Thomas J. Sansone (ct00617)**
**CARMODY TORRANCE SANDAK & HENNESSEY, LLP**
**195 Church Street, 18th floor**
**New Haven, CT 06509**
**Phone (203) 777-5501**
**Fax: (203) 784-3199**
**tsansone@carmodylaw.com**
***Attorneys for Plaintiff Huntington Technology Finance, Inc.***

**CERTIFICATE OF SERVICE**

**The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Plaintiff's Motion to for Summary Judgment was served upon the following counsel of record this 26th day of July, 2019 via the Court's Electronic Filing System:**

**Eric A. Henzy**
**Christopher H. Blau**
**Zeisler & Zeisler, P.C**
**10 Middle Street, 15th Floor**
**Bridgeport, CT 06604**
**ehenzy@zeislaw.com**
**cblau@zeislaw.com**
**Attorneys for Defendants**

**METZ LEWIS BRODMAN MUST O'KEEFE LLC**

***/s/ Justin M. Tuskan***
**John R. O'Keefe, Jr.**
**Justin M. Tuskan**