IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **HUNTINGTON TECHNOLOGY FINANCE, INC. f/k/a MACQUARIE EQUIPMENT FINANCE, INC. f/k/a MACQUARIE EQUIPMENT FINANCE, LLC**<br><br>Plaintiff,<br><br>vs.<br><br>**GARETT ALAN NEFF a/k/a GARY NEFF, JOHN MARK SCHMID, and DAVID KARL SCHMID**<br><br>Defendants. | Case No. 3:18-cv-01708-VLB<br><br>HONORABLE VANESSA L. BRYANT |

**Response to Defendants' Statement of Undisputed Material Facts**

**Plaintiff Huntington Technology Finance, Inc. f/k/a Macquarie Equipment Finance, Inc. f/k/a Macquarie Equipment Finance, LLC ("Huntington"), by its attorneys, files the within Response to Defendants Garret Alan Neff's, John Mark Schmid's, and David Karl Schmid's (collectively the "Guarantors") Statement of Undisputed Material Facts:**

1. The Defendants are individuals with home addresses in the State of Connecticut. Complaint (ECF Doc. No. 1, ¶¶ 2-4, a true and correct copy of which is annexed hereto as Exhibit 2); Defendants' Answer And Affirmative Defenses To The Complaint (ECF Doc. No. 24, ¶¶ 2-4; hereinafter, the "Answer," a true and correct copy of which is annexed hereto as Exhibit 3). **Admitted.**

2. The Defendants are members of Garage Media, LLC ("GMCT"), a

1

Connecticut limited liability company that was formed on or about January 15, 2009. Declaration of Garett Neff In Support Defendants' Motion For Partial Summary Judgment, ¶ 2 (hereinafter, the "Neff Declaration"; annexed hereto as Exhibit 4). **Admitted.**

3. GMCT is the sole member of Garage Media NY LLC ("GMNY"), a New York limited liability company that was formed on or about October 5, 2010. Neff Declaration, ¶ 3. **Admitted.**

4. On October 26, 2010, GMCT, GMNY, the Defendants, the Plaintiff and certain other parties entered and/or executed the following agreements and documents:

a. GMNY and CBS Outdoor Media ("CBS") entered into a Display Agreement dated as October 26, 2010. The Port Authority of New York and New Jersey (the "Port") agreed to and acknowledged the Display Agreement. Display Agreement, p. 14 (a true and correct copy of which is annexed hereto as Exhibit 5). As recited in the Display Agreement, CBS and the Port had earlier entered into a Permit Agreement dated May 20, 1996 (as amended, the "Permit Agreement"), pursuant to which CBS was given permission by the Port to install and operate an outdoor advertising sign on the exterior of the Port Bus Terminal (the "PA Terminal") in New York City. Id. at p. 1. The Permit Agreement granted CBS the right to license its rights to a third party with the prior approval of the Port. Id. Pursuant to the Display Agreement, CBS licensed its rights under the Permit Agreement to GMNY for the purpose of granting GMNY the right to install a Mediamesh digital sign (the "Sign") on the PA Terminal. Id. **Admitted.[1]**

---

**[1] For purposes of this Response to the Guarantors' Statement of Undisputed Material Facts, and unless otherwise stated herein, any admission made by Huntington with respect to terms a written document constitutes an admission that the terms cited are accurately set forth or reproduced. Huntington denies Guarantors' interpretation of any such document.**

b.     GMNY, GMCT, A2a Media, Inc., GKD-USA Inc. ("GKD") and the Plaintiff entered into an Equipment Purchase Agreement, a true and correct copy of which is annexed hereto as Exhibit 6, pursuant to which, among other things, GKD agreed to sell and construct the Sign. Exhibit A-1 to the Equipment Purchase Agreement (page 22 of 28 of the Equipment Purchase Agreement) provides that the total purchase price of the Sign is $6,026,000.00. **Admitted.**

c.     In order to finance the purchase and installation of the Sign, on October 26, 2010, GMNY entered into that certain Lease No. 001, dated October 26, 2010 (the "Lease Agreement"), with the Plaintiff. Exhibit 2, ¶ 8 and Exhibit A; Exhibit 3, ¶ 8. In paragraph 22 of the Lease Agreement, GMNY granted the Plaintiff a security interest in all of its assets and property of any kind or nature whatsoever as security for its obligations under the Lease Agreement. **It is denied that GMNY "finance[d] the purchase and installation of the Sign" in accordance with the terms of the Lease Agreement. Instead, GMNY leased the Sign from Huntington. Lease Agreement (Exhibit A) at § 1.[2] The remaining allegations of this paragraph are admitted.**

d.     In connection with the execution of the Lease Agreement, the Defendants signed the Guaranty which is annexed to the Exhibit 2 as Exhibit F. **Admitted.**

e.     Also in connection with the execution of the Lease Agreement, GMCT entered into a guaranty of all of GMNY's obligations under the Lease Agreement, a true and correct copy of which is annexed hereto as Exhibit 7. **Admitted.**

f.     Also in connection with the execution of the Lease Agreement, to secure its

---

[2] **Referenced exhibits are included in Huntington's Appendix to its Motion for Summary Judgment unless otherwise appended hereto.**

obligations under the Lease Agreement, GMCT entered into a Pledge and Security Agreement, a true and correct copy of which is annexed hereto as Exhibit 8, pursuant to which it, among other things, granted Macquarie Equipment Finance, LLC ("Macquarie") a lien on, security interest in, and right of setoff against, among other property, general intangibles and "all of the stock, shares, membership interests, partnership interests and other equity ownership interests in [GMNY] now or hereafter held by [GMCT] (collectively, the "Ownership Interests") and all of [GMCT]'s rights to participate in the management of [GMNY], [and] all rights, privileges, authority and powers of [GMCT] as owner or holder of Ownership Interests in [GMNY]." Exhibit 8, section 2, at pp. 3-5. **Admitted.**

    g.    Also in connection with the execution of the Lease Agreement, GMCT executed an Equity Power document, pledging its ownership interest in GMNY, a true and correct copy of which is annexed hereto as Exhibit 9. **Admitted.**

    h.    Also in connection with the execution of the Lease Agreement, the Defendants entered into a Pledge Agreement, a true and correct copy of which is annexed hereto as Exhibit 10, pursuant to which they, among other things, granted Macquarie a lien on, security interest in, and right of setoff against, among other property, "all of the stock, shares, membership interests, partnership interests and other equity ownership interests in [GMCT] now or hereafter held by [the Defendants] (collectively, the "Ownership Interests") and all of [the Defendants]' rights to participate in the management of [GMCT], [and] all rights, privileges, authority and powers of [the Defendants] as owner or holder of Ownership Interests in [GMCT] . . . ." Exhibit 10, section 2, pp. 2-3. **Admitted.**

    i.    Also in connection with the execution of the Lease Agreement, the

**Defendants executed Equity Power documents, pledging their ownership interests in GMCT, which pledge was retained by Macquarie, true and correct copies of which are annexed hereto as Exhibit 11. <span style="color:red">Admitted.</span>**

5.   At various dates after October 26, 2010, the Lease Agreement was amended by the following (the Lease Agreement, as amended, the "Lease Documents"):

   a.   Amendment No. 1 dated June 13, 2010.

   b.   Amendment No. 2 dated July 28, 2011 ("Amendment 2").

   c.   Amendment No. 3 dated September 1, 2012.

   d.   Amendment dated as of March 31, 2013 ("Amendment 4").

Exhibit 2, ¶ 9 and Exhibit B, C, D, and E; Exhibit 3, ¶ 9. <span style="color:red">Admitted.</span>

6.   Pursuant to Amendment 2, in total GMNY borrowed $7,041,952.00 from the Plaintiff, $1,050,000.00 of which was used to fund a security deposit to secure GMNY's obligations to the Plaintiff. Exhibit C to Exhibit 2, ¶ A at p. 1; Neff Declaration ¶ 5. <span style="color:red">Denied. GMNY did not borrower any sum of money from Huntington. Instead, Huntington leased the Sign to GMNY in accordance with the terms and conditions of the Lease Agreement. Lease Agreement (Exhibit A) at §§ 1-34.</span>

7.   GMNY made payments to the Plaintiff under the Lease Documents totaling $5,522,724.81. Approximately $490,141.82 of this amount was on account of sales taxes paid over by the Plaintiff to the applicable government entities. In addition, the Plaintiff applied the $1,050,000.00 security deposit to GMNY's obligations under the Lease Documents. Neff Declaration ¶ 6. <span style="color:red">Denied. See Affidavit of John Zimmeth ("Zimmeth Affidavit") (Exhibit A) and Exhibit A-1 attached thereto, which provides that GMNY made monthly payments to Huntington in accordance with the terms of the Lease Agreement,</span>

5

**as amended, until on or about March 1, 2015, when payments ceased.**

8. On its federal and state tax returns, GMNY treated the Lease Documents as a financing arrangement, in that it included the Sign as an asset on its balance sheet, included the amount due under the Lease Documents as a liability on its balance sheet, and claimed deprecation with respect to the Sign. GMNY provided copies of its federal and state tax returns to the Plaintiff. Neff Declaration ¶ 7. **Huntington is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore denies the same. The Neff Declaration states that GMNY treated the Lease Documents as a financing arrangement on its tax returns, however, no documentation has been provided in support of this assertion. Huntington therefore objects to this statement of fact pursuant to Fed. R. Civ. P. 56(c)(2).**

9. In August 2010, prior to the closing on the Lease Documents on October 26, 2010, Patty Margin, an employee of the Plaintiff, advised GMNY that state and local sales taxes on the transaction were payable on the monthly payment to be made under the Lease Documents, rather than in a lump sum at the time of the purchase of the sign. Neff Declaration ¶8; Margin E-mail Dated August 30, 2010, annexed as Exhibit 12. **Denied. The email from Ms. Magrin states that she "explained how taxes work." See Margin E-mail Dated August 30, 2010. That email provides no further information.**

10. The Plaintiff sometimes used the same master agreement for both true lease and financing transactions. Depending on whether a particular transaction was a true lease or a financing, not all of the provisions of the Plaintiff's master agreement were applicable; for example, in a finance transaction, the residual value, fair market value, and transfer of equipment component of Lessor's return are not applicable. John

6

Zimmeth deposition, at 80-83, annexed as Exhibit 13. **Denied. The testimony of Mr. Zimmeth speaks for itself, and the foregoing is a mischaracterization thereof. Mr. Zimmeth specifically testified that the Lease Agreement was written "for this deal" and that there were certain provisions incorporated therein as a result of the type of equipment being leased. See Zimmeth Deposition (Exhibit 13 to Defendants' Motion) at 79:6-11.**

11.    While in its Complaint the Plaintiff alleges that $8,302,118.35 is owed by the Defendants under the Lease Documents, Exhibit 2 at ¶ 16, in its internal records and communications the Plaintiff recognized that its net exposure was between $3.8 million and $3.9 million at various times in 2018. E-mail from Jabir Aulakh to Mike Przytakoski dated January 12, 2018, annexed hereto as Exhibit 14;[1] Plaintiff internal write off memo, annexed hereto as Exhibit 15. Edward Kitchen, the workout person assigned to the GMNY account, designated by the Plaintiff as a 30(b)(6) witness and identified as a person with knowledge regarding the claims made in the Complaint in responses to interrogatories, was able to give essentially no explanation of the amount that the Plaintiff claims is owed by GMNY beyond the approximately $3.8 figure stated in the foregoing documents when questioned at his deposition. Edward J. Kitchen Deposition, at pp. 36-39, annexed hereto as Exhibit 16. **Denied. As of July 17, 2019, the amount due and owing by GMNY to Huntington under the Lease Agreement is $8,962,074.79, exclusive of attorneys' fees and continuing interest. Zimmeth Affidavit (Exhibit A) at ¶ 12. That amount is comprised of base rent, taxes, interest, and a Lessor's Return. Id ¶¶ 13-19. Moreover, Mr. Kitchen's testimony speaks for itself, and Guarantors mischaracterize it. Mr. Kitchen testified that the $3.8 million figure referenced above was *not* Guarantors' total liability. Deposition of Edward J. Kitchen at 38:19-21. Mr. Kitchen further testified certain amounts may have**

7

**been excluded from that number, such as interest. Id. at 38:22-24.**

12. The Sign went "live" on June 10, 2010. In July, 2011, the first of a long series of system failures with the Sign occurred. The Sign has experienced dozens of significant technical problems and system failures. Based on, among other reasons, these system failures, design issues, and increasing competition in the New York City advertising sign market, GMNY was unable to earn sufficient sums from selling advertising on the Sign to service the debt due the Plaintiff and cover operating costs. Since February, 2015, GMNY has made four payments to the Plaintiff under the Lease Documents. Neff Declaration ¶ 9. **Admitted in part and denied in part. It is admitted that the Sign has experienced technical problems and system failures. It is further admitted that GMNY has failed to make payment to Huntington when due. The remaining allegations of this paragraph are denied. Huntington has not received any payment whatsoever from GMNY of rent or taxes in accordance with the terms of the Lease Agreement since the partial payment applied to the amount due March 1, 2015. Zimmeth Affidavit (Exhibit A) at ¶ 16.**

13. Between February, 2015, and October 2, 2018, the Plaintiff did not send a written notice to GMNY that GMNY had failed to pay any Rental Payment (as defined in the Lease Documents) or other amount due under the Lease Documents. Neff Declaration ¶10. **Denied. There is no dispute regarding GMNY's default under the terms and conditions of the Lease Agreement. Deposition Transcript of Garrett Alan Neff (Exhibit K) at 88:9-17. Deposition Transcript of John Mark Schmid (Exhibit L) at 69:22-25, 85:1-5; Deposition Transcript of David Karl Schmid (Exhibit M) at 41:21-23. The amount due from GMNY upon default is calculated and otherwise set forth under the Lease Agreement. See Zimmeth Affidavit at ¶¶ 12-19. GMNY expressly agreed that its obligation to pay the**

amounts due under the Lease Agreement was absolute, unconditional, and not subject to abatement, reduction, or any defense whatsoever. Lease Agreement (Exhibit B) at § 5. Furthermore, Guarantors waived "demand, protest or notice of any default or nonperformance by [GMNY], [and] all affirmative defenses, offsets and counterclaims against [Huntington] . . ." Guaranty (Exhibit C) at § 3.

14. Monthly invoices that the Plaintiff sent to GMNY from October, 2015 through March, 2018, did not include any amount due for late or default interest. Neff Declaration ¶ 11. Denied for the reasons set forth in Paragraph 15 above.

15. An aging report that the Plaintiff sent to GMNY in March, 2016, did not include any amount due for late or default interest. Neff Declaration ¶ 12. Huntington is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore denies the same. The Neff Declaration states that GMNY received a report which did not delineate default interest, however, no documentation has been provided in support of this assertion. Huntington therefore objects to this statement of fact pursuant to Fed. R. Civ. P. 56(c)(2).

16. Prior to October 2, 2018, the Plaintiff never made a demand for payment of late or default interest and never gave GMNY any indication or notice that the Plaintiff asserted that default or late interest was due or accruing. Neff Declaration ¶ 13. Denied for the reasons set forth in Paragraph 15 above.

17. Until October 2, 2018, the Plaintiff never notified GMNY of the occurrence of an Event of Default under the Lease Documents or sought to exercise it remedies under Paragraph 18 of the Lease Agreement. Neff Declaration ¶ 14. Denied for the reasons set forth in Paragraph 15 above.

18.     The Lease Agreement provides, at paragraph 23, that "Unless [GMNY] has the right to acquire [the Plaintiff's] interest in the Equipment at the end of the Term for nominal or no additional consideration, the parties intend this [Lease Agreement] to be a true lease and not one intended merely for security." Exhibit A to Exhibit 2, at p. 9. **Admitted.**

19.     Pursuant paragraph 6(b) of the Lease Agreement, as amended by Amendment 4, "at the end of the Renewal Term, this [Lease Agreement] will terminate and [GMNY][2] will be entitled to [the Plaintiff's] interest in the Equipment for $1." Exhibit E to Exhibit 2, at p. 2. **Denied. Section 6 of the Lease Agreement, as amended, provides that, at the end of the base term, GMNY may purchase the Sign for $1,170,000.00. Amendment 4 (Exhibit G) at p. 1.**

20.     The law of the state of New York governs the Lease Documents. Exhibit A to Exhibit 2, at ¶ 34, p. 10. **Admitted.**

21.     The Lease Agreement provides that it is "is noncancelable during its Term…." Exhibit A to Exhibit 2, at ¶ 5, p. 3. **Denied. The Lease Agreement states that it is "noncancelable during its Term (except as expressly provided in this Lease)." Lease Agreement (Exhibit B) at § 5.**

22.     Paragraph 18(d) of the Lease Agreement provides:

> If an Event of Default is continuing, … [the Plaintiff] may in its absolute discretion and with notice to [GMNY] exercise any one or more of these remedies:
> …
> (d) Require [GMNY] to pay the Lessor's Return, calculated by [the Plaintiff] as of the date of [the Plaintiff's] demand, and upon [the Plaintiff's] full receipt of the Lessor's Return as a result of [the Plaintiff's] demand under this section, plus all other amounts outstanding under this Lease, this Lease will terminate and [the Plaintiff] will transfer to [GMNY] any Equipment still in

>     [GMNY's] possession.

**Exhibit A to Exhibit 2, at p. 7. Admitted.**

23. Paragraph 19 of the Lease Agreement provides:

>     Lessor's Return. Lessor may become entitled to the Lessor's Return, which shall be Lessor's anticipated benefit of its bargain and profit from this Lease transaction (to which it will specifically be entitled). The Lessor's Return, as stipulated to herein, includes amounts attributed by the parties to (and a loss to Lessor upon a Loss or Event of Default is dependent in part upon) unpaid Rental Payments to become due, the original cost of the Equipment and Soft Cost Items to Lessor, the unrealized anticipated value of the Equipment to Lessor, [and] the future observance by Lessee of its nonrental Lease obligations for the

**Exhibit A to Exhibit 2, at p. 8. Admitted.**

24. Under the Lease Agreement, GMNY was responsible to pay all taxes, including state and local sales taxes. Exhibit A to Exhibit 2, at ¶ 7, pp. 4-5. **Admitted.**

25. Paragraph 25 of the Lease Agreement provides in part: "Late Performance; Interest Limitations. Amounts due under this Lease that are not paid within 30 days of their due date will bear interest, payable on demand, at the rate of 12% per year, or such lesser rate as may be the maximum legal rate, from their due dates." Exhibit A to Exhibit 2, at pp. 9-10. **Admitted.**

26. Paragraph 17 of the Lease Agreement provides in part: "Default. It is an 'Event of Default' by Lessee under this Lease if: (a) PAYMENT. Lessee's failure to pay any Rental Payments or other amount under this Lease when due continues for 10 days after notice." Exhibit A to Exhibit 2, at p. 7. **Admitted.**

**Additional Material Facts**

Huntington incorporates by reference its Statement of Undisputed Material Facts filed in support of its Motion for Summary Judgment as if more fully set forth herein.

                                              Respectfully Submitted,

Date: August 30, 2019                METZ LEWIS BRODMAN MUST
                                              O'KEEFE LLC

By: */s/ Justin M. Tuskan*
    John R. O'Keefe, Jr. (phv00948)
    Justin M. Tuskan (phv00926)
    535 Smithfield Street, Suite 800
    Pittsburgh, PA 15222
    Phone: (412) 918-1100
    Fax: (412) 918-1199
    jokeefe@metzlewis.com
    jtuskan@metzlewis.com
    *Attorneys for Plaintiff*
    *Huntington Technology Finance, Inc.*

- and -

Thomas J. Sansone (ct00617)
**CARMODY TORRANCE SANDAK & HENNESSEY, LLP**
195 Church Street, 18th floor
New Haven, CT 06509
Phone (203) 777-5501
Fax: (203) 784-3199
tsansone@carmodylaw.com
*Attorneys for Plaintiff*
*Huntington Technology Finance, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Response to Defendants' Statement of Undisputed Material Facts was served upon the following counsel of record this 30th day of August, 2019 via the Court's Electronic Filing System:

>Eric A. Henzy
>Christopher H. Blau
>Zeisler & Zeisler, P.C
>10 Middle Street, 15th Floor
>Bridgeport, CT 06604
>ehenzy@zeislaw.com
>cblau@zeislaw.com
>Attorneys for Defendants

**METZ LEWIS BRODMAN MUST O'KEEFE LLC**

*/s/ Justin M. Tuskan*
**John R. O'Keefe, Jr.
Justin M. Tuskan**