IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HUNTINGTON TECHNOLOGY FINANCE, INC. f/k/a  MACQUARIE EQUIPMENT FINANCE, INC. f/k/a MACQUARIE EQUIPMENT FINANCE, LLC | Case No. 3:18-cv-01708-VLB<br><br>HONORABLE VANESSA L. BRYANT |
| Plaintiff, | |
| vs. | |
| GARETT ALAN NEFF a/k/a GARY NEFF, JOHN MARK SCHMID, and DAVID KARL SCHMID | |
| Defendants. | |

<u>REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Huntington Technology Finance, Inc. f/k/a Macquarie Equipment Finance, Inc. f/k/a Macquarie Equipment Finance, LLC ("Huntington"), by its attorneys, files the within Reply Brief in Support of its Motion for Summary Judgment (the "Motion") as follows:

I.      INTRODUCTION

With four briefs now filed of record in connection with the parties' efforts to obtain summary judgment, it is readily apparent that this case is no longer a disagreement about *if* Defendants Garrett Neff, John Schmid, and David Schmid (collectively "Guarantors") are liable to Huntington for the amounts due under the

Guaranty[1], but rather, the *amount* that Huntington is due. At every stage, Guarantors have conceded the outstanding default of Garage Media NY, LLC ("GMNY") under the Lease Agreement. However, Guarantors attempt to limit their total exposure by arguing that: (a) the Lease Agreement was not a true lease; (b) Huntington has admitted that only $3.8 million is due; and/or (c) Huntington exercised such a degree of control over GMNY's business that Guarantors are entitled to an undefined offset. Each of Guarantors' defenses are without factual support and fail as a matter of law. Accordingly, this Court should grant summary judgment in Huntington's favor.

## II.   ARGUMENT

**A. The Lease Agreement is a true lease, and Guarantors' waived the right to challenge the nature of the parties' transaction. As a result, Guarantors are required to pay all amounts due under the Lease Agreement, including base rent, default interest, the Lessor's Return, and taxes.**

As set forth in Huntington's Brief in Opposition to Guarantors' Motion for Summary Judgment, which is incorporated by reference as if more fully set forth herein, Guarantors' have waived the right to challenge the nature of the Lease Agreement. Even if such a waiver did not exist, the Lease Agreement is a true lease. First, Guarantors expressly waived any defenses to enforcement under the Guaranty's express terms. Guaranty (Exhibit C) at §§ 2-3.[2] Accordingly, Guarantors are precluded from arguing that the Lease Agreement represents a secured

---

[1] Capitalized terms used herein shall have the same meaning as set forth in the Motion and Brief in Support unless otherwise defined.

[2] Referenced exhibits are included in Huntington's Appendix to the Motion unless otherwise attached hereto.

financing transaction. See 136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc., 644 F. App'x 10, 12–13 (2d Cir. 2016) ("these plain terms, in broad, sweeping and unequivocal language, bound [guarantor] to the obligations recited in the [l]ease, regardless of whether the [l]ease or its provisions were enforceable as to the [lessor]"). Further, there is no authority outside of the bankruptcy context that stands for the proposition that in an action filed in state or federal district court governed by state law, guarantors under a lease agreement have the right to seek recharacterization as a defense.

Moreover, the Lease Agreement is a true lease. Guarantors contend that, because GMNY has the option to purchase the Sign for nominal consideration, the Lease Agreement disguised financing. Guarantors reading of the Lease Agreement is flawed. Section 6 of the Lease Agreement, as amended, provides that, at the end of the base term, GMNY may purchase the Sign for $1,170,000.00. Amendment 4 (Exhibit G) at p. 1. A purchase price of nearly $1.2 million is not a nominal amount. Guarantors also allege that GMNY owed the Sign. That is patently false. Under the terms and conditions of the Equipment Purchase Agreement by and between GMNY et al., GKD, and Huntington, whatever initial interest GMNY maintained in the Sign was assigned to Huntington, and thereafter, Huntington held all right, title, and interest in and to the Sign. See Equipment Purchase Agreement attached to Guarantors' Motion for Summary Judgment as Exhibit 6 at § 26.1 By executing the Equipment Purchase Agreement, GMNY also acknowledged that Huntington was leasing the Sign to GMNY under the Lease Agreement. Id. Because the Lease

Agreement is a true lease, Guarantors are required to pay all amounts due under the Lease Agreement, including a Lessor's Return and taxes.

Finally, insofar as Guarantors assert that default interest did not begin to accrue until October of 2018, it is axiomatic that "absolute guaranties containing waivers of demand and notice to the guarantor are enforceable, and demand is not required." In re S. Side House, LLC, 470 B.R. 659, 675-76 (Bankr. E.D.N.Y. 2012) (applying New York law). By executing the Guaranty, Guarantors explicitly waived demand or notice of any default or nonperformance by GMNY. Guaranty (Exhibit C) at § 3. Thus, Huntington is entitled to the payment of default interest by the Guarantors on *all* amounts past due irrespective of whether a default notice was ever sent to or received by Guarantors.

     B.  **The amount due to Huntington by virtue of GMNY's default is clear on the face of the Lease Agreement, and Huntington has not made inconsistent statements to the contrary.**

Although Guarantors' claim that the amount due under the Lease Agreement is opaque and subject to factual dispute, nothing could be further from the truth. Instead, the amount due under the Lease Agreement is a simple mathematical calculation based upon specific terms GMNY and Huntington agreed to. To wit:

| Component | Amount | Lease Section |
|---|---|---|
| Rent | $135,000.00 per month | Section 5; Amendment Section II |
| Taxes | $12,025.63 per month based upon New York tax rate of 8.875-percent | Section 7 |
| Default Interest | 12-percent annually | Section 25 |
| Lessor's Return | $283,075.00 | Sections 18(d) and 19 |

It is undisputed that Huntington has not received any payment whatsoever from GMNY since a partial payment applied to the amount due March 1, 2015. Therefore,

4

the total amount of past due rent and taxes currently owed as of July 2019 is $6,568,663.35. Additionally, as of July 2019, the total amount of interest on past due rent and taxes currently owed is $2,083,161.24, and the total amount of interest on the past due Lessor's Return is $27,175.20. Guarantors need only read the Lease Agreement in order to arrive at the forgoing sums.

Notwithstanding the plan language of the Lease Agreement, Guarantors maintain that internal Huntington correspondence indicates that the amount due is only $3.8 million. Guarantors' assertion is a red herring. First, as noted above, the terms of the Lease Agreement govern the amount due. Guarantors do not argue – nor could they – that Huntington ever waived the right to collect all sums contractually owed under the Lease Agreement. Internal discussions among Huntington employees regarding the GMNY transaction ultimately have no bearing whatsoever on what GMNY or Guarantors are required to pay in accordance with the unambiguous provisions of the Lease Agreement. Second, Guarantors' position is based upon a fundamental misapprehension of the documents it references. The email correspondence between Huntington personnel appended to Guarantors' Response to the Motion discusses the "net exposure" to Huntington, *not* the total amount due under the terms of Lease Agreement.

Guarantors' selective reading of Huntington's internal discussions regarding the Lease Agreement ignores the fact that net exposure and the total amount due from GMNY and Guarantors are two separate things. In response to email correspondence from Jasbir Aulakh et al. regarding net exposure, Edward Kitchen stated that "We will need to figure out the CARS amount listed." <u>See</u>

January 12, 2018 email correspondence attached to Guarantors' Response to the Motion as Exhibit 6. As Mr. Kitchen explained during his deposition, unlike the net exposure figure, the CARS amount is "what's *actually* owed" to Huntington and would include *all* amounts payable under the provisions of the Lease Agreement. Deposition Transcript of Edward Kitchen at 37:10-18, attached hereto marked as Exhibit T. Mr. Kitchen further testified that Guarantors' liability to Huntington was *not* limited to $3.8 million. Id. at 38:19-21. Next, Guarantors attempt to create disparity between John Zimmeth's deposition testimony and his Affidavit.  There is no daylight between the two. Mr. Zimmeth never testified that Guarantors were only responsible for payment of $3.8 million. Instead, Mr. Zimmeth stated that the $3.8 million was the "net exposure" on the books of Huntington, that said number was essentially "frozen in time" because the obligation was placed on non-accrual, and that the total amount due under the Lease Agreement was a separate calculation. Deposition Transcript of John Zimmeth at 69:1-2 and 23-25, 70:12-16, 71:1-7 ("Zimmeth Tr."), attached hereto marked as Exhibit U.

> C. Guarantors are responsible for payment of all sums due and owing to Huntington under the Letter of Credit.

Guarantors attempt to escape responsibility for payment of the amounts due in connection with the Letter of Credit by asserting that: (1) Guarantors did not have prior notice of such a claim; and (2) the Letter of Credit is not an amount due under the Lease Agreement. Guarantors are mistaken on both accounts.

In pertinent part, the Complaint provides that Guarantors unconditionally guaranteed the payment of all sums due by GMNY to Huntington, and that Huntington seeks judgment for "all . . . amounts outstanding under the Lease

Documents." Complaint (Doc. 1) at ¶ 19, 22. The Letter of Credit was issued in connection with the Display Agreement (as that term is defined in the Lease Agreement). As of December 2018, GMNY was in default of the Display Agreement for failure to make payment when due. Outfront letter correspondence (Exhibit J) at p.1. As a result of GMNY's default, Outfront drew on the entire principal balance of the Letter of Credit in the amount of $600,000.00 in or about December 2018. Id. A default under the Display Agreement is a default under the Lease Agreement. Lease Agreement (Exhibit B) at § 17(g). GMNY is required to pay all sums due to Huntington as a result of its default under the Display Agreement, i.e. the $600,000.00 drawn by Outfront on the Letter of Credit. Id. at § 18(e). In turn, Guarantors are responsible for the full and prompt payment of all amounts due by GMNY. Guaranty (Exhibit C) at § 1. On or about January 23, 2019, Huntington made demand for payment in connection with the Letter of Credit. See Letter of Credit Demand letter (Exhibit S). No payment was ever received.

Rule 8 of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As a general rule, courts are to construe pleadings liberally. See Welch v. City of New York, 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997), aff'd 166 F.3d 1203 (2d Cir. 1998) (stating that courts must "construe  plaintiffs pleadings liberally as a means to accomplish the end of a just judgment"); Harbin v. Assurance Co. of Am., 308 F.2d 748, 750 (10th Cir. 1962) (noting that, under the Federal Rules of Civil Procedure, the dimensions of a lawsuit are not solely determined by the pleadings because "the pleadings are not a rigid and

unchangeable blueprint of the rights of the parties"). Here, the Complaint seeks payment from Guarantors of all amounts due under the Lease Agreement. Reimbursement in connection with the Letter of Credit is an amount due pursuant to the Lease Agreement. As a result, Guarantors are liable for payment to Huntington on the $600,000.00 drawn by Outfront plus interest.[3]

    **D. Guarantors waived the right to assert their affirmative defenses, and even if they had not, there is no genuine issue of material fact precluding summary judgment in Huntington's favor.**

In an attempt to circumvent the clear and unambiguous waiver language contained in the Guaranty, Guarantors argue that, because the parties entered into a secured transaction pursuant to Article 9 of the New York Uniform Commercial Code, Huntington's obligations of good faith, diligence, and reasonable care still apply and cannot be waived. However, the Lease Agreement does not evidence a secured financing transaction. For the reasons enumerated above and in Huntington's Brief in Opposition to Guarantors' Motion for Summary Judgment, the Lease Agreement is a true lease, and Guarantors cannot recharacterize the Lease Agreement as a secured loan. Consequently, Article 9 does not apply. The absolute waiver language contained in the Guaranty means that Guarantors are precluded from raising their affirmative defenses. However, even if Article 9 did govern the parties' relationship, there is no evidence that Huntington acted in bad faith. To the contrary, Guarantors admit that Huntington acted in GMNY's best interests See Huntington's Brief in Support of the Motion (Doc. 38-1) at p. 16.

---

[3] In the alternative, should this Court conclude that the Complaint does not state a claim for repayment in connection with the Letter of Credit, Huntington will seek leave to amend the Complaint prior to trial.

As to Guarantors' assertions that Huntington interfered with GMNY's marketing efforts, or prejudiced GMNY in its discussions with GKD, Guarantors have failed to raise a genuine issue of material fact. The only "evidence" offered by Guarantors in support of their position regarding GMNY's switch from A2a to Clear Channel are the self-serving declarations of Garret Neff and John Schmid. However, "[g]eneralized and conclusory affidavits are insufficient to withstand [a] motion for summary judgment." Weeks v. ARA Servs., 869 F. Supp. 194, 196 (S.D.N.Y. 1994). Moreover, "[n]o genuine issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Sala v. Gates Const. Corp., 868 F. Supp. 474, 476 (E.D.N.Y. 1994).

In the present matter, the documents produced in discovery and filed of record in support of the Motion conclusively illustrate that GMNY acted of its own volition and terminated A2a for poor performance. And, most importantly, Mr. Neff admitted in his deposition that GMNY – not Huntington – made the decision to switch to Clear Channel. Neff. Tr. (Exhibit K) at 159:6-12. Guarantors cannot manufacture a factual dispute by making conclusory and conflicting statements in their declarations, which are not supported by contemporaneous documents, correspondence, or the like. Instead, the Court must credit Guarantors' own words, as contained in their depositions and written documents prepared by them, over contrary statements of declarations created solely for the purposes of litigation. See Sala v. Gates Const. Corp., 868 F. Supp. 474, 478 (E.D.N.Y. 1994).

For similar reasons, there is no genuine issue of fact regarding GMNY's relationship with GKD. Guarantors assert in their declarations that Huntington

personnel acted in a "threatening" manner when meeting with GKD, and as such, GMNY believed it did not have decision-making power regarding whether to file suit against GKD. But, Mr. Neff testified clearly during his deposition that GMNY "never" considered a lawsuit against GKD in the first place. Neff Tr. (Exhibit K) at 70:6-8, 22-23. Even accepting Guarantors' declaration averments as true, it seems that Huntington's alleged confrontation with GKD would serve to benefit GMNY. If Huntington had been successful in convincing GKD to fix the Sign, the perpetual technical issues would have stopped, likely resulting in increased ad revenue, which in turn would have permitted GMNY to make its required lease payments.[4]

Lastly, Guarantors do not specifically articulate the net effect of their affirmative defenses should they succeed. Are Guarantors entitled to an offset against the total amount due? If so, how much? None of these questions are ever answered, and it is not Huntington's or this Court's job to speculate. At the point where Guarantors fail to tell this Court how or why their affirmative defenses serve to limit their liability, said defenses are properly overruled.

E.  The Zimmeth Affidavit is not hearsay.

Guarantors object to the Zimmeth Affidavit as inadmissible hearsay because Mr. Zimmeth did not prepare the overview of the amount due appended as Exhibit

---

[4] For the first time, Guarantors also take issue with John Zimmeth's involvement in discussions with the Porth Authority. Guarantors offer no evidence as to the relationship between Mr. Zimmeth's communications and GMNY's failure to make payment to Huntington when due. Furthermore, the statements in Guarantors' declaration are, yet again, contracted by deposition testimony. Mr. Neff previously testified that, despite Mr. Zimmeth informing the Port Authority that GMNY was not making payments when due, the Port Authority continued to negotiate an extension, and even proposed a draft agreement in connection with the same. Neff Tr. (Exhibit K) at 84:5-11, 85:9-13

A-1, and therefore, cannot offer testimony about it. In this regard, Guarantors are simply wrong on the applicable law.

Under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), "the custodian need not have personal knowledge of the actual creation of the document. Nor is there any requirement . . . that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." Phoenix Assocs. III v. Stone, 60 F.3d 95, 101 (2d Cir. 1995) (quotations and citations omitted). Instead, to be a qualified witness, Mr. Zimmeth need only show that he is familiar with the record-keeping system of the Huntington and how the records were created. Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d 542, 572 (S.D.N.Y. 2013). Mr. Zimmeth testified in his deposition that records regarding the amount due under the Lease Agreement were regularly kept by Huntington in the ordinary course of business, that the calculation in question was first prepared when the GMNY matter was transferred to Mr. Kitchen, and that the workout team compiled the calculation in conjunction with in-house counsel. Zimmeth Tr. at 70:12-25, 71:1-7. Mr. Zimmeth has also averred that the documents reviewed in connection with or otherwise comprising his Affidavit were made at or near the time of the relevant transaction, kept in the course of regularly conducted business activity, and that it was the regular practice of Huntington to make such records. Zimmeth Affidavit at ¶ 2. Accordingly, Mr. Zimmeth's testimony is not hearsay.[5]

---

[5] Guarantors' assertions with respect to inconsistences between the Zimmeth Affidavit and Mr. Zimmeth's deposition are addressed in Section B above. Guarantors' statement that Mr. Zimmeth had no knowledge of the amount due to

III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Huntington Technology Finance, Inc.
f/k/a Macquarie Equipment Finance, Inc. f/k/a Macquarie Equipment Finance, LLC
respectfully requests that this Court grant summary judgment in its favor and
against Defendants Garett Alan Neff, John Mark Schmid, and David Karl Schmid.

Respectfully Submitted,

Date: September _13_, 2019

METZ LEWIS BRODMAN MUST
O'KEEFE LLC

By: */s/ Justin M. Tuskan*
    John R. O'Keefe, Jr. (phv00948)
    Justin M. Tuskan (phv00926)
    535 Smithfield Street, Suite 800
    Pittsburgh, PA 15222
    Phone: (412) 918-1100
    Fax: (412) 918-1199
    jokeefe@metzlewis.com
    jtuskan@metzlewis.com
    *Attorneys for Plaintiff*
    *Huntington Technology Finance,*
    *Inc.*

    - and -

    Thomas J. Sansone (ct00617)
    CARMODY TORRANCE SANDAK
    & HENNESSEY, LLP
    195 Church Street, 18th floor
    New Haven, CT 06509
    Phone (203) 777-5501
    Fax: (203) 784-3199
    tsansone@carmodylaw.com
    *Attorneys for Plaintiff*
    *Huntington Technology Finance,*
    *Inc.*

---

Huntington at the time of his deposition is a gross mischaracterization. During his
deposition, Mr. Zimmeth never said anything of the sort.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Brief in Support of Plaintiff's Motion to for Summary Judgment was served upon the following counsel of record this _13_ day of September, 2019 via the Court's Electronic Filing System:

Eric A. Henzy
Christopher H. Blau
Zeisler & Zeisler, P.C
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com
cblau@zeislaw.com
Attorneys for Defendants

METZ LEWIS BRODMAN MUST
O'KEEFE LLC

_/s/ Justin M. Tuskan_
John R. O'Keefe, Jr.
Justin M. Tuskan