# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HUNTINGTON TECHNOLOGY FINANCE, | : | CIVIL ACTION NO. 3:18-cv-01708-VLB |
| INC., f/k/a MACQUARIE EQUIPMENT | : | |
| FINANCE, INC., f/k/a MACQUARIE | : | |
| EQUIPMENT FINANCE, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| GARETT ALAN NEFF a/k/a GARY NEFF, | : | September 13, 2019 |
| JOHN MARK SCHMID, | : | |
| and DAVID KARL SCHMID, | : | |
| | : | |
| Defendants, | : | |

## DEFENDANTS' REPLY TO HUNTINGTON'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

A. The Defendants do not seek to "recharacterize" the Lease Agreement, and nothing in the Guaranty waives the Defendants' ability to challenge the Plaintiff's mischaracterization of the Lease Agreement. ................................ 1

B. The Defendants may properly challenge the amount owed by GMNY ................. 3

C. In arguing that the Lease Agreement is a true lease, the Plaintiff quotes and relies on the wrong  sub-part of former NYUCC 1-201(37) ............................. 5

D. The Plaintiff's argument that the determination of whether the Lease Agreement constitutes a true lease or a financing can only be made in a bankruptcy case is incorrect and contrary to overwhelming case authority that states that such determination is governed by state law. ....................... 7

E. The Plaintiff misunderstands or mischaracterizes the Defendants' argument regarding interest. ........................................................................... 9

F. Conclusion .......................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Butner v. United States*, 440 U.S. 48, 55 (1979)......................................................8

*Canterbury Realty & Equipment Corp. v. Poughkeepsie Sav. Bank*, 524 N.Y.S.2d 531

  (N.Y. App. Div. 1988) ............................................................................................1

*Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co.*, 93 F.3d 1064 (2nd Cir.

  1996) ......................................................................................................................5

*Cunningham v. Cornell University*, 2018 U.S. Dist. LEXIS 152972 (S.D.N.Y. 2018).............8

*Fangio v. Vehifax Corp. (In re Ajax Integrated, LLC)*, 554 B.R. 568 (N.D.N.Y 2016) ...........8

*GE Capital Mortgage Servs. V. Pinnacle Mortgage Inv. Corp.*, 897 F.Supp. 842 (E.D. Pa.

  1995) ......................................................................................................................4

*Group 1 Auto, Inc. v. Country Imported Car Corp.*, 2012 U.S. Dist. LEXIS 190676

  (E.D.N.Y. 2012).....................................................................................................3

*Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082 (S.D.N.Y. 1995) ..................3, 4

*In re Action Transit, Inc.*, 2008 Bankr. LEXIS 513 (E.D. Wis. 2008) .......................................2

*In re Clinton Nurseries, Inc.*, 2018 Bankr. LEXIS 1454 (Bankr. D. Conn. 2018) .......2, 6, 7, 8

*In re PCH Assoc.*, 804 F.2d 193 (2nd Cir. 1986) .......................................................................2

*In re QDS Components, Inc.*, 292 B.R. 313 (Bankr. W.D. Ohio 2002) ...................................8

*Innersprings, Inc. v. Joseph Aronauer, Inc.*, 27 F.R.D. 32 (E.D.N.Y. 1961) ..........................8

*International Trade Admin. V. Rensselaer Polytechnic Inst.*, 936 F.2d 744 (2nd Cir. 1991)

  ................................................................................................................................2

*L & B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88 (2d Cir. 1998)...........................4

*Merchant Cash & Capital LLC v. Edgewood Group*, LLC, 2015 U.S. Dist. LEXIS 94162

(S.D.N.Y. 2015) ............................................................................................... 3, 4

*Midwest Corp. v. Global Cable, Inc.*, 688 F. Sup. 872 (S.D.N.Y. 1988) .................................. 4

*Orix Fin. Servs. V. Thunder Ridge Energy, Inc.*, 2005 U.S. Dist. LEXIS 41889 (S.D.N.Y.

2005) ............................................................................................................... 3, 4

*Pro-Specialties v. Thomas Funding Corp.*, 812 F.2d 797 (2nd Cir. 1987) ............................. 4

*PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1 (S.D.N.Y. 2001) ......

........................................................................................................................ 2, 6

*Rentrak v. Ladieu (In re Ladieu)*, 2011 Bankr. LEXIS 721 (Bankr. D. Vt. 2011) ................... 8

*Sweeters v. Hodges*, 683 N.Y.S. 2d 9 (1st Dep't 1998) ........................................................ 4

*WorldCom, Inc.* v. *GE Global Asset Management Services (In re WorldCom, Inc.)*, 339

B.R. 56 (Bankr. S.D.N.Y. 2006) ............................................................. 2, 7, 8

**Statutes**

11 U.S.C. § 365 ...................................................................................................... 7

NY UCC § 1-203 ..................................................................................................... 2

NY UCC § 1-201 ................................................................................................. 5, 6

**Rules**

Fed. R. Civ. P. 2 ...................................................................................................... 8

Defendants Garett Neff ("Neff"), John Schmid ("J. Schmid") and David Schmid ("D. Schmid," and together with Neff and J. Schmid, the "Defendants") file this reply to the Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 41, the "Plaintiff's Brief"), filed on August 30, 2019, by Huntington Technology Finance, Inc., f/k/a Macquarie Equipment Finance, Inc., f/k/a Macquarie Equipment Finance, LLC (the "Plaintiff").

**A.** **The Defendants do not seek to "recharacterize" the Lease Agreement, and nothing in the Guaranty waives the Defendants' ability to challenge the Plaintiff's mischaracterization of the Lease Agreement.**

At page 2 of the Plaintiff's Brief, the Plaintiff argues that by taking the position that the Lease Agreement transaction was a financing the Defendants are attempting to "recharacterize" what the Plaintiff claims is a true lease, and that in the Guaranty the Defendants expressly waived all defenses,[1] including "recharacterization."   Both arguments are incorrect.

First, the Defendants are not seeking to "recharacterize" the Lease Agreement. The Lease Agreement is what it is.  "When the parties sign the contract and become bound, they have either made a lease or a security agreement.  That agreement is based upon their present judgments about values, useful life, inflation, risk of non-payment,

---

[1] The Plaintiff asserts that the Defendants waived all defenses, but as the Defendants explain in the Defendants' Memorandum in Support of Objection to Plaintiff's Motion for Summary Judgment (Doc. No. 43-1, the "Defendants' Memorandum"), at pages 29-31, the affirmative defenses raised by the Defendants are not barred as a matter of law.  In addition, an absolute and unconditional guaranty does not foreclose a guarantor's challenge that the creditor's wrongful post-execution conduct triggered the event that accelerates or causes the guarantor's liability. *Canterbury Realty & Equipment Corp. v. Poughkeepsie Sav. Bank*, 524 N.Y.S.2d 531, 535 (N.Y. App. Div. 1988).  As described in the Defendants' Memorandum, it is the Plaintiff's wrongful post-execution conduct that triggered any liability of the Defendants under the Guaranty.

and other matters. . . . Foresight not hindsight controls." *WorldCom, Inc.* v. *GE Global Asset Management Services (In re WorldCom, Inc.)*, 339 B.R. 56, 67 (Bankr. S.D.N.Y. 2006).  The fact that the Plaintiff called the Lease Agreement a lease does not mean that, by pointing out that the Lease Agreement transaction was a financing transaction, the Defendants are seeking to recharacterize the Lease Agreement. Courts are clear that the labels put on such an agreement are largely irrelevant and that they will look to the economic substance of the transaction. *International Trade Admin. V. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 748 (2nd Cir. 1991) ("The use of terms such as 'lease' or 'landlord' and 'tenant' does not automatically transform an agreement into a bona fide lease for purposes of this section of the Code; rather, a court must look to the economic substance of the transaction.'" (quoting *In re PCH Assoc.*, 804 F.2d 193, 200 (2nd Cir. 1986))); *PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 44 (S.D.N.Y. 2001) ("The intent of the parties at the time the agreement was entered into is irrelevant to the determination of whether a true lease has been established.  The statute [new Section 1-203, old Section 1-201] sets forth a test, which looks to the underlying substance of the transaction.  If both parts of the statutory test are met, then, as a matter of law, the transaction is really a sale which created a security interest"); *In re Clinton Nurseries, Inc.*, 2018 Bankr. LEXIS 1454, [*9 n.1] (Bankr. D. Conn. 2018) (Exhibit A); *In re Action Transit, Inc.*, 2008 Bankr. LEXIS 513, [*14] (E.D. Wis. 2008) ("The parties may not change the legal effect of the document by giving it a different name") (Exhibit B).

In addition, there is nothing in the Guaranty which states that the Defendants waived the right to assert the true nature and legal effect of the Lease Agreement, or

2

dispute the Plaintiff's mischaracterization of the Lease Agreement.  Disputing the Plaintiff's mischaracterization of the Lease Agreement does not constitute an affirmative defense, as the nature and legal effect of the Lease Agreement goes to the very nature of the underlying liability of Garage Media New York ("GMNY").  *See Orix Fin. Servs. V. Thunder Ridge Energy, Inc.*, 2005 U.S. Dist. LEXIS 41889, [*38] (S.D.N.Y. 2005) (Exhibit C); *Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082, 1089 (S.D.N.Y. 1995) ("A defense is not affirmative where it merely negates an essential element of the plaintiff's prima facie case.").

As demonstrated in the Defendants' Memorandum, the Lease Agreement transaction was a secured financing *from the very beginning.*  Essentially the Plaintiff argues that it can come into court and call a horse a donkey, but that the Defendants are barred from pointing out that the horse is in fact a horse.  There is no such bar in the Guaranty.

**B.    The Defendants may properly challenge the amount owed by GMNY.**

At pages 3-6 of the Plaintiff's Brief, the Plaintiff essentially argues that the Defendants may not challenge the amount owed by GMNY.  This argument clearly is not correct under New York law.

"In order to enforce a guaranty, a plaintiff must establish (1) the existence of the guaranty, (2) *the underlying debt*, and (3) the guarantor's failure to perform under the guaranty." *Merchant Cash & Capital LLC v. Edgewood Group*, LLC, 2015 U.S. Dist. LEXIS 94162 [*21] (S.D.N.Y. 2015) (emphasis added) (Exhibit D); *see also Group 1 Auto, Inc. v. Country Imported Car Corp.*, 2012 U.S. Dist. LEXIS 190676, [*25-*26] (E.D.N.Y. 2012) (Exhibit E) (same).  Thus, under New York law a "guarantor is liable 'only for the

3

amount of the principal obligor's default.'"  *Merchant Cash & Capital LLC*, 2015 U.S. Dist. LEXIS 94162, [*21] (S.D.N.Y. 2015) (quoting *Sweeters v. Hodges*, 683 N.Y.S. 2d 9, 9 (1st Dep't 1998));  *see also L & B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 92 (2d Cir. 1998) ("The language of the guaranty (unconditional as it is) is not a waiver of every defense to a damages claim, and does not foreclose a challenge to the calculation of the amount owed"); *Pro-Specialties v. Thomas Funding Corp.*, 812 F.2d 797, 799 (2nd Cir. 1987) ("[T]he district court could not have found a guarantee without first finding the principal debtor liable on the principal obligation."); *Orix Financial Services v. Thunder Ridge Energy, Inc.*, 2005 U.S. Dist. LEXIS 41889, at *31 (S.D.N.Y. 2005); *GE Capital Mortgage Servs. V. Pinnacle Mortgage Inv. Corp.*, 897 F.Supp. 842, 847 (E.D. Pa. 1995) (interpreting absolute and unconditional guaranty governed by New York law which included waiver of all defenses and finding that "despite the fact that the Guaranty is absolute, the court disagrees that the [guarantors] are liable irrespective of whether the [primary obligor] is currently in default under some underlying obligation"); *Midwest Corp. v. Global Cable, Inc.*, 688 F. Sup. 872, 875 (S.D.N.Y. 1988) ("the guarantor cannot be liable for an amount greater than that for which the principal is liable"). Nothing in the Guaranty waived the Defendants' ability to dispute the amount owed by GMNY, as the amount owed is part of the Plaintiff's prima facie case rather than an affirmative defense. *See Orix Fin. Servs. V. Thunder Ridge Energy, Inc.*, 2005 U.S. Dist. LEXIS 41889, [*38] (S.D.N.Y. 2005); *Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082, 1089 (S.D.N.Y. 1995) ("A defense is not affirmative where it merely negates an essential element of the plaintiff's prima facie case.").

     In their Motion for Partial Summary Judgment (Doc. No. 36, the "Defendants'

MSJ") and the Defendants' Memorandum, the Defendants assert that they are entitled to judgment as a matter of law on certain elements of the Plaintiff's claim.

> Under New York law, guarantee agreements must be strictly construed according to their terms.  A guarantor's obligation must be "narrowly construed and cannot be extended beyond the plain and explicit language of the contract."  Guarantees are strictly construed because the guarantor "cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty."

*Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co.*, 93 F.3d 1064, 1073-74 (2nd Cir. 1996) (construing unconditional guaranty).  Any "ambiguity must be resolved in favor of the guarantors."  *Id.* at 1074.  At paragraph 2 of the Guaranty, the plain language provides that the Defendants guarantee obligations of GMNY arising under the Lease Agreement.  In the Defendants' MSJ and the Defendants' Memorandum, the Defendants dispute that GMNY owes certain amounts pursuant to the terms of the Lease Agreement, namely, the Lessor's Return, taxes and interest, *i.e.*, the Defendants contend that these are not obligations of GMNY under the Lease Agreement, and therefore are not obligations covered by the Guaranty.

**C.    In arguing that the Lease Agreement is a true lease, the Plaintiff quotes and relies on the wrong sub-part of fromer NYUCC 1-201(37).**

Paragraph 6(b) of the Lease Agreement, as amended by Amendment 4, provides that "at the end of the Renewal Term, this [Lease Agreement] will terminate and [GMNY][2] will be entitled to [the Plaintiff's] interest in the Equipment for $1."  At pages 6-8 of the Plaintiff's Brief, the Plaintiff argues that under the Lease Agreement, as amended, at the end of the *base term*, GMNY could purchase the Sign for $1,170,000.00,

---

[2] The Plaintiff does not challenge that paragraph 6(b) in Amendment 4 contains a scrivener's error in that it uses the term "Lessor" when it clearly intended to use the term "Lessee." (*See*

5

that such amount is not nominal, that the $1.00 buyout was only available at the end of a renewal term, and, *quoting former NYUCC section 1-201(37)(a)(i)*, that the relevant measurement period is the Lease Agreement's original term.

The Plaintiff quotes and relies on the wrong sub-part of former NYUCC 1-201(37). Former NYUCC section 1-201(37)[3] provides (emphasis added):

> (a)  **Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:**
> (i)  **the original term of the lease is equal to or greater than the remaining economic life of the goods,**
> (ii)  **the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,**
> (iii)  **the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, *or***
> (iv)  ***the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement*.**

As many courts have recognized, the nominal consideration test is at 1-201(37)(a)(iv), not (a)(i) as argued by the Plaintiff.  *In re Clinton Nurseries, Inc.*, 2018 Bankr. LEXIS 1454, [*14-*16]; *PSINet, Inc. v. Cisco Systems Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 45 (Bankr. S.D.N.Y. 2001).  NYUCC 1-201(37(a)(iv) does not contain any reference to "original term."  The fact that GMNY did not perform does not change the analysis.  *In re*

---

Defendants' Memorandum, at n. 5.)
[3] As noted in the Defendants' Memorandum, former section 1-201(37) of the New York Uniform Commerical Code was revised in December of 2014 and the relevant provisions moved to UCC section 1-203.  2014 N.Y. Sess. Laws § 51 (McKinney).

*Clinton Nurseries, Inc.*, 2018 Bankr. LEXIS 1454, [*15-*16] ("That compliance with the . . .

Lease is a condition to the right to exercise the option to purchase does not mean that

the option only existed if there is no default."); *In re Worldcom, Inc.*, 339 B.R. at 67

("When the parties sign the contract and become bound, they have either made a lease

or a security agreement.  That agreement is based upon their present judgments about

values, useful life, inflation, risk of non-payment, and other matters.  Foresight not

hindsight controls.").

**D.** **The Plaintiff's argument that the determination of whether the Lease Agreement constitutes a true lease or a financing can only be made in a bankruptcy case is incorrect and contrary to overwhelming case authority that states that such determination is governed by state law.**

At pages 8-12 of the Plaintiff's Brief, the Plaintiff appears to argue that only a

bankruptcy court may determine whether a transaction constitutes a true lease or a

financing, and/or that only a bankruptcy court may "recharacterize" a true lease into a

financing transaction.

First, as discussed above, the Defendants are not seeking to recharacterize the

Lease Agreement, they are disputing the Plaintiff's mischaracterization of the Lease

Agreement.

Second, while the issue of whether an agreement constitutes a true lease or a

financing often comes up in bankruptcy cases because of the impact that determination

has on parties' rights under 11 U.S.C. § 365, the Plaintiff's argument fundamentally

misunderstands the respective roles of state law and bankruptcy law in the making of

and effect of that determination. The true lease versus financing distinction is not

determined by anything in the Bankruptcy Code, it is very clearly a matter of state law.

As the Supreme Court has held, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). Thus, "[a]lthough the Bankruptcy Code contemplates the differences between true leases and secured transactions and the respective rights of the parties that flow from each, state law controls the classification of a contractual agreement as between the two." *Fangio v. Vehifax Corp. (In re Ajax Integrated, LLC)*, 554 B.R. 568, 577 (N.D.N.Y 2016); *see also, e.g., In re Clinton Nurseries, Inc.*, 2018 Bankr. LEXIS 1454, [*10] (same); *Rentrak v. Ladieu (In re Ladieu)*, 2011 Bankr. LEXIS 721, [*27] (Bankr. D. Vt. 2011) ("State law determines whether an agreement constitutes a true lease or a security agreement.") (Exhibit F); *In re Worldcom, Inc.*, 339 B.R. at 63 (same); *In re QDS Components, Inc.*, 292 B.R. 313, 321 (Bankr. W.D. Ohio 2002) (same). Thus, the determination is based on *state law*, not any provision of or some equitable power under the Bankruptcy Code.

In addition, even if the determination of a transaction's character as a true lease or a secured financing were somehow exclusively an exercise of a court's equitable powers – which it is not – the Plaintiff's apparent claim that this Court "is a court of law" and therefore precluded from considering equitable matters is some years out of date. *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); *Cunningham v. Cornell University*, 2018 U.S. Dist. LEXIS 152972, [*9] (S.D.N.Y. 2018) ("The merger of law and equity … occurred in 1938 with the adoption of Rule 2, Fed. R. Civ. P.") (Exhibit G); *Innersprings, Inc. v. Joseph Aronauer, Inc.*, 27 F.R.D. 32, 35 (E.D.N.Y. 1961) ("under our merged system we no longer have separate courts of law and equity and for most purposes the distinction between common law and equity has lost its vitality").

8

**E.    The Plaintiff misunderstands or mischaracterizes the Defendants' argument regarding interest.**

At pages 12-13 of the Plaintiff's Brief, the Plaintiff's argue that the Defendants' position is that because they did not receive written notice of non-payment until October 2, 2018, that the Defendants are entitled to judgment that they are not liable for interest accruing before that date.[4]  That is not the Defendants' position.

In the Defendants' MSJ and Defendants' Memorandum, the Defendants argue that under the Lease Agreement because default interest was expressly made payable by *GMNY* on demand, and because the Plaintiff did not make demand *against GMNY* for any past due payments until October 2, 2018, there was no Event of Default (as defined in paragraph 17 of the Lease Agreement) prior to October 2, 2018, and default interest did not begin to accrue at all under the Lease Agreement until October 2, 2018.  *See* Defendants' Memorandum at pages 19-21.

The Plaintiff conflates the notice waiver in the Guaranty with the requirement in paragraph 25 of the Lease Agreement that the Plaintiff make demand before default interest would begin to accrue.  The Defendants are not arguing that they have no liability for default interest under the Guaranty because the Plaintiff did not provide them with notice of GMNY's default prior to the initiation of this action.  Instead, the Defendants are arguing that, as they are only liable for the amounts due the Plaintiff by GMNY and GMNY is only liable for default interest accruing following the October 2, 2018, demand for payment, the Defendants are not liable for any amount attributable to

---

[4] **The Plaintiff does not contest that default interest under paragraph 25 of the Lease Agreement is only "payable on demand" and thus GMNY itself is not liable for default interest arising out of missed payments that pre-date the October 2, 2018, notice of default, which the Plaintiff**

default interest accruing prior to that date.  The notice waiver in the Guaranty is entirely irrelevant.

**F.**     <u>Conclusion</u>

For the reasons stated herein and in the Defendants' Memorandum, the Defendants request that the Court grant the Defendants' MSJ and such other and further relief as is just.

Dated September 13, 2019, at Bridgeport, Connecticut.

<div style="margin-left:40%;">

**GARETT ALAN NEFF ALSO KNOWN AS GARY NEFF, JOHN MARK SCHMID AND DAVID KARL SCHMID**

 */s/ Eric A. Henzy*
**Eric A. Henzy (ct12849)**
**Christopher H. Blau (ct30120)**
**Zeisler & Zeisler, P.C.**
**10 Middle Street, 15th Floor**
**Bridgeport, CT  06604**
**Telephone: 203-368-4234**
**Email: ehenzy@zeislaw.com**
**        cblau@zeislaw.com**

</div>

---

concedes was the only notice of default issued to GMNY.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 13th, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


 */s/ Eric A. Henzy*
**Eric A. Henzy (ct12849)**