**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **HUNTINGTON TECHNOLOGY FINANCE, INC. f/k/a  MACQUARIE EQUIPMENT FINANCE, INC. f/k/a MACQUARIE EQUIPMENT FINANCE, LLC** | **Case No. 3:18-cv-01708-VLB** |
| **Plaintiff,** | **February 28, 2020** |
| **vs.** | |
| **GARETT ALAN NEFF a/k/a GARY NEFF, JOHN MARK SCHMID, and DAVID KARL SCHMID** | |
| **Defendants.** | |

<u>**JOINT TRIAL MEMORANDUM**</u>

Plaintiff Huntington Technology Finance, Inc. f/k/a Macquarie Equipment Finance, Inc. f/k/a Macquarie Equipment Finance, LLC ("<u>Plaintiff</u>"), and Defendants Garett Alan Neff a/k/a Gary Neff, John Mark Schmid, and David Karl Schmid (collectively "<u>Defendants</u>"), by the undersigned counsel, jointly file the within Joint Trial Memorandum as follows:

I.   <u>**Trial Counsel**</u>

| | |
|---|---|
| **John R. O'Keefe Jr.** | **Eric A. Henzy** |
| **Justin M. Tuskan** | **Christopher H. Blau** |
| **Metz Lewis Brodman Must O'Keefe LLC** | **Zeisler & Zeisler, P.C** |
| **535 Smithfield Street, 8th Floor** | **10 Middle Street, 15th Floor** |
| **Pittsburgh, PA 15222** | **Bridgeport, CT 06604** |
| **Phone: (412) 918-1100** | **Phone: (203) 368-4234** |
| **Fax: (412) 918-1199** | **Fax: (203) 367-9678** |
| [jokeefe@metzlewis.com](mailto:jokeefe@metzlewis.com) | [ehenzy@zeislaw.com](mailto:ehenzy@zeislaw.com) |
| [jtuskan@metzlewis.com](mailto:jtuskan@metzlewis.com) | [cblau@zeislaw.com](mailto:cblau@zeislaw.com) |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

## II. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00.

## III. Jury/Non-Jury

The case is to be tried non-jury.

## IV. Length of Trial

The parties anticipate that trial will last 3-5 days.

## V. Further Proceedings

The parties do not anticipate the necessity of any further proceedings, except those considered appropriate by the Court for adjudication of (1) the pending Plaintiff's Motion for Summary Judgment (Doc. 38) and Defendants' Motion for Summary Judgment (Doc. 36) and/or (2) any motions in *limine* filed contemporaneously with and attached to this Joint Trial Memorandum.

## VI. Nature of Case

***Plaintiff's Description of the Nature of the Case***

This is an action to enforce the personal guarantee obligations of Defendants to Plaintiff. Garage Media NY, LLC ("GMNY") and Plaintiff are parties to that certain Lease No. 001 dated October 26, 2010 (as amended, "Lease No. 001"), pursuant to which GMNY leases from Plaintiff a 6,010 square foot Mediamesh digital signage installation located at the Port Authority Bus Terminal in New York, New York.  By the terms of that certain Guaranty dated October 26, 2010 (the "Guaranty"), Defendants unconditionally guaranteed the full and

prompt payment when due of all obligations of GMNY under the Lease No. 001. GMNY is in default under the terms of the Lease No. 001 for failure to make payment when due. Under the Guaranty, Defendants are responsible for payment of the total amount now due from GMNY. The Guaranty contains a broad waiver of defenses, and Defendants obligation to pay all amounts due and owing from GMNY to Plaintiff exists and remains outstanding irrespective of whether the Lease No. 001 is a true lease, a financing transaction, or any other form of monetary obligation.  Plaintiff categorically denies that the only way it is entitled to recover under the Guaranty is if this Court concludes that the Agreement is a true lease.

**Defendants' Description of Nature of the Case**

There are two components to this case:

A.  *Plaintiff's claims of liability and damages.*

Critical to the nature of this case is the nature of the Agreement.  The Defendants take the position that by the plain language of the Agreement and pursuant to well-established law, the Agreement was a financing transaction rather than a true lease.  A finding that the Agreement was a financing transaction would have several consequences.

First, the Plaintiff in this action has taken the position in pleadings filed in this case that the Guaranty at issue here is applicable *because the Agreement was a personal property lease*.  These statements made by the Plaintiff constitute judicial admissions.

Second, assuming that the Guaranty at issue is applicable at all, a finding that the Agreement was a financing transaction would significantly reduce the amount due by GMNY and therefore any liability of the Defendants under the Guaranty.  Specifically, two substantial components of the Plaintiff's claim for damages, the so-called "Lessor's Return" and amounts due for taxes, are applicable only in the context of a true lease and so would not be owed by GMNY here.

In addition, assuming that the Guaranty at issue is applicable at all, because the Plaintiff never made a demand for payment of all amounts due under the Agreement prior to October of 2018, GMNY is liable for default interest only after that date.  The Defendants can only be liable for amounts that are owed by GMNY.

   B. *Defendants' affirmative defenses.*

The Plaintiff had a duty of good faith, diligence, reasonableness and care in this transaction that was imposed by Article 9 of the New York Uniform Commercial Code and which was not waivable by GMNY or the Defendants.  The Plaintiff breached that duty by interfering in GMNY's business by, among other things, demanding that GMNY replace its advertising  sales agent with a sales agent that GMNY did not believe would be acting solely in the best interest of GMNY and disclosing to GMNY's "landlord", the Port Authority of New York and New Jersey, that GMNY was in default of its obligations with the Plaintiff at a time when GMNY was attempting to negotiate an extension of its agreement with the

Port.  The Plaintiff's conduct damaged GMNY's business and made it impossible for GMNY to perform under the Agreement.

### VII.   Trial by Magistrate Judge

The parties do not consent to a trial by a Magistrate Judge.

### VIII.   Evidence

#### A. *Witnesses*

Plaintiff's Witness List

| Name and Address | Summary of Testimony | Duration |
|---|---|---|
| John Zimmeth<br>c/o Metz Lewis Brodman Must O'Keefe LLC<br>535 Smithfield Street, 8th Floor<br>Pittsburgh, PA 15222 | Mr. Zimmeth will testify regarding the underlying Lease No. 001, the relationship between GMNY and Plaintiff, GMNY's failure to make payment in accordance with the Lease No. 001, and the amount due and owing to Plaintiff. | 4-8 hours |
| Ed Kitchen<br>c/o Metz Lewis Brodman Must O'Keefe LLC<br>535 Smithfield Street, 8th Floor<br>Pittsburgh, PA 15222 | Mr. Kitchen will testify with respect to the relationship between GMNY and Plaintiff after the obligation was transferred to Plaintiff's Special Assets division, as well as Plaintiff's efforts to enforce its remedies and the costs associated with the same. | 2-4 hours |
| Garrett Neff<br>c/o Zeisler & Zeisler, P.C<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 | Mr. Neff will testify regarding the underlying Lease No. 001, the relationship between GMNY and Plaintiff, and GMNY's failure to make payment in accordance with the Lease No. 001. | 4-8 hours |
| John Schmid<br>c/o Zeisler & Zeisler, P.C<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 | Mr. Schmid will testify regarding the underlying Agreement, the relationship between GMNY and Plaintiff, and GMNY's failure to make payment in accordance with the Lease No. 001. | 2-4 hours |

Each of the above-referenced witnesses are likely to testify at trial.  The Defendants do not object to Plaintiff calling the above-listed individuals as

witnesses at trial, but reserve the right to object to specific elements of their testimony as appropriate.

<u>Defendants' Witness List</u>

| Name and Address | Summary of Testimony | Duration |
|---|---|---|
| John Schmid<br>c/o Zeisler & Zeisler, P.C<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 | John Schmid will testify regarding the underlying Agreement, the relationship between GMNY and Plaintiff, the Plaintiff's conduct and GMNY's business. | 4-8 hours |
| Garrett Neff<br>c/o Zeisler & Zeisler, P.C<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 | Garrett Neff will testify regarding the underlying Agreement, the relationship between GMNY and Plaintiff, the Plaintiff's conduct and GMNY's business. | 4-8 hours |
| David Schmid<br>c/o Zeisler & Zeisler, P.C<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 | David Schmid will testify regarding the underlying Agreement, the relationship between GMNY and Plaintiff, the Plaintiff's conduct and GMNY's business. | 2-4 hours |
| John Zimmeth<br>c/o Metz Lewis Brodman Must O'Keefe LLC<br>535 Smithfield Street, 8th Floor<br>Pittsburgh, PA 15222 | John Zimmeth will testify regarding the underlying Agreement, the relationship between GMNY and Plaintiff, the Plaintiff's conduct and GMNY's business. | 4-8 hours |
| Ed Kitchen<br>c/o Metz Lewis Brodman Must O'Keefe LLC<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 | Ed Kitchen will testify regarding the underlying Agreement and any amounts due under the Agreement. | 2-4 hours |
| Patty Magrin<br>c/o Metz Lewis Brodman Must O'Keefe LLC<br>535 Smithfield Street, 8th Floor<br>Pittsburgh, PA 15222 | Patty Magrin will testify regarding the underlying Agreement, the relationship between GMNY and Plaintiff and the Plaintiff's conduct. | 2-4 hours |

Each of the above-referenced witnesses except Patty Magrin are likely to testify at trial. Patty Magrin will be called only if the need arises. Except as otherwise set forth in its Motion in Limine appended hereto, Plaintiff does not

object to Defendants calling the above-listed individuals as witnesses at trial, but reserves the right to object to specific elements of their testimony as appropriate.

***Defendants' Responses To Plaintiff's Objections To Defendants' Witnesses***:

Defendants' reserve the right to oppose Plaintiff's motion in *limine*.

B. ***Exhibits***

**Plaintiff's Exhibit List**

Attached hereto as Exhibit A is a list of all exhibits to be offered by the Plaintiff at trial. Pursuant to the Court's pretrial preferences, the Plaintiff reserves the right to offer additional exhibits for impeachment and/or rebuttal.

***Defendants' Statement of the grounds and authority supporting objection to admissibility of exhibits***:

**Exhibit 14 (Hearsay FRE 801, 802)**

This Exhibit is hearsay not subject to an exception.

**Exhibit 15 (Hearsay FRE 801, 802)**

This Exhibit is hearsay not subject to an exception.

**Exhibit 16 (Hearsay FRE 801, 802)**

This Exhibit is hearsay not subject to an exception.

**Exhibit 17 (Hearsay FRE 801, 802)**

This Exhibit is hearsay not subject to an exception.

**Exhibit 18 (Hearsay FRE 801, 802)**

This Exhibit is hearsay not subject to an exception.

**Exhibit 19 (Hearsay FRE 801, 802)**

This Exhibit is hearsay not subject to an exception.

**Exhibit 20 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 21 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 22 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 23 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 24 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 25 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 28 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

**Exhibit 32 (Hearsay FRE 801, 802)**

  **This Exhibit is hearsay not subject to an exception.**

***Plaintiff's statement of grounds and authority supporting admissibility*:**

**Exhibit 14**

  **This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).**

**Exhibit 15**

  **This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).**

**Exhibit 16**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 17**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 18**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 19**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 20**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 21**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 22**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 23**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 24**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 25**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 28**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Exhibit 32**

This Exhibit is a business record, and therefore an exception to the rule against hearsay pursuant to FRE 803(6).

**Defendants' Exhibit List**

Attached hereto as Exhibit B is a list of all exhibits to be offered by the Defendant at trial.  Pursuant to the Court's pretrial preferences, the Defendant reserves the right to offer additional exhibits for impeachment and/or rebuttal.

***Plaintiff's Statement of the grounds and authority supporting objection to admissibility of exhibits*:**

As more fully set forth in its Motion in Limine, Plaintiff objects to any document or evidence Defendants seek to offer in support of a defense that is barred under the terms of the Guaranty.

Plaintiff specifically objects to the following exhibits.

**Exhibit BBBB (Relevance 401, 403)**

To the extent Defendants seek to offer Exhibit BBBB in support of their assertion that, by judicial admission, Huntington has conceded that the Guaranty only applies if Lease No. 001 is a "true lease", the position taken by Plaintiff with respect to the terms, conditions, or enforceability of the Lease Agreement and/or the Guaranty in connection with its Motion for Summary Judgment does not constitute a judicial admission. Raine v. CBS, Inc., 25 F. Supp. 2d 434, 441 (S.D.N.Y. 1998). Further, Plaintiff has never argued that that Lease No. 001 is *only* covered by the Guaranty if Lease No. 001 is a "true lease." See Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 41) at p.9 ("Moreover, no matter whether the transaction at issue is a lease or financing, GMNY and Guarantors are contractually obligated to pay Huntington all amounts set forth in [Lease No. 001]."). In fact, Plaintiff has stated exactly the opposite. Id. at p.10 ("Thus, even if . . . the Lease Agreement represents a secured financing transaction . . . the parties mutually agreed under the Lease Agreement and the Guaranty that certain amounts must be paid by GMNY and/or Guarantors in exchange for use of the Sign and after default . . .").

Finally, the Guaranty plainly secures "*any* and all of the various agreements, instruments, documents, or other arrangements . . . by [GMNY] in favor of [Plaintiff] or which [Plaintiff ] may be entitled to the benefit of . . ." Guaranty (Exhibit 2) at § 2 (emphasis added). The Guaranty, like any written agreement, "is subject to the ordinary principles of contract construction."

<u>Cooperatieve Centrale RaiffeisenBoerenleenbank, B.A. v. Navarro</u>, 25 N.Y.3d 485, 491 (N.Y. 2015). As such, the Guaranty must be enforced according to the plain meaning of its terms. <u>Id</u>. To adopt Plaintiff's interpretation of the interplay between Lease No. 001 and the Guaranty would require this Court to impermissably read-out an entire provision of the Guaranty. In light of the foregoing, Exhibit BBBB does not have the tendency to make a fact more or less probable than it would be otherwise, and is therefore irrelevant under FRE 401.

<u>Exhibit CCCC (Relevance 401, 403)</u>

To the extent Defendants seek to offer Exhibit BBBB in support of their assertion that, by judicial admission, Huntington has conceded that the Guaranty only applies if Lease No. 001 is a "true lease", the position taken by Plaintiff with respect to the terms, conditions, or enforceability of the Lease Agreement and/or the Guaranty in connection with its Motion for Summary Judgment does not constitute a judicial admission. <u>Raine v. CBS, Inc.</u>, 25 F. Supp. 2d 434, 441 (S.D.N.Y. 1998). In addition, Plaintiff's Statement of Material Fact is binding solely for purposes of its Motion for Summary Judgment. L.R. 56(a)1-2. Further, Plaintiff has never argued that that Lease No. 001 is *only* covered by the Guaranty if Lease No. 001 is a "true lease." <u>See</u> Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 41) at p.9 ("Moreover, no matter whether the transaction at issue is a lease or financing, GMNY and Guarantors are contractually obligated to pay Huntington all amounts set forth in [Lease No. 001]."). In fact, Plaintiff has stated exactly the opposite. <u>Id</u>. at p.10 ("Thus, even if . . . the Lease Agreement represents a secured financing transaction . . . the parties

mutually agreed under the Lease Agreement and the Guaranty that certain amounts must be paid by GMNY and/or Guarantors in exchange for use of the Sign and after default . . .").

Finally, the Guaranty plainly secures "*any* and all of the various agreements, instruments, documents, or other arrangements . . . by [GMNY] in favor of [Plaintiff] or which [Plaintiff] may be entitled to the benefit of . . ." Guaranty (Exhibit 2) at § 2 (emphasis added). The Guaranty, like any written agreement, "is subject to the ordinary principles of contract construction." Cooperatieve Centrale RaiffeisenBoerenleenbank, B.A. v. Navarro, 25 N.Y.3d 485, 491 (N.Y. 2015). As such, the Guaranty must be enforced according to the plain meaning of its terms. Id. To adopt Plaintiff's interpretation of the interplay between Lease No. 001 and the Guaranty would require this Court to impermissably read-out an entire provision of the Guaranty. In light of the foregoing, Exhibit BBBB does not have the tendency to make a fact more or less probable than it would be otherwise, and is therefore irrelevant under FRE 401.

*Defendants' statement of grounds and authority supporting admissibility*:

Response to Plaintiff's General Objection: Defendants reserve all rights to oppose whatever arguments the Plaintiff makes in its motion in *limine*.  Out of an abundance of caution, the Defendants make a brief statement supporting the admissibility of their proposed exhibits based on their knowledge of what may be in the Plaintiff's motion in *limine* based on other pleadings that the Plaintiff has filed in this case.

1.   The Defendants have the right to contest the nature of the Agreement.

13

The Plaintiff has argued in other pleadings in this case that by taking the position that the Agreement was a financing transaction the Defendants are attempting to "recharacterize" what the Plaintiff claims is a true lease, and that in the Guaranty the Defendants expressly waived all defenses, including "recharacterization."  Both arguments are incorrect, and the Defendants have the right to present evidence regarding the nature of the Loan Agreement.

First, the Defendants are not seeking to "recharacterize" the Agreement. The Agreement is what it is.  "When the parties sign the contract and become bound, they have either made a lease or a security agreement.  That agreement is based upon their present judgments about values, useful life, inflation, risk of non-payment, and other matters. . . . Foresight not hindsight controls." *WorldCom, Inc.* v. *GE Global Asset Management Services (In re WorldCom, Inc.)*, **339 B.R. 56, 67 (Bankr. S.D.N.Y. 2006).**  The fact that the Plaintiff called the Agreement a lease does not mean that by pointing out that the Agreement transaction was a financing transaction the Defendants are seeking to recharacterize the Loan Agreement.  Courts are clear that the labels put on such an agreement are largely irrelevant and that they will look to the economic substance of the transaction.  *International Trade Admin. V. Rensselaer Polytechnic Inst.*, **936 F.2d 744, 748 (2nd Cir. 1991)** ("The use of terms such as 'lease' or 'landlord' and 'tenant' does not automatically transform an agreement into a bona fide lease for purposes of this section of the Code; rather, a court must look to the economic substance of the transaction.'" (quoting *In re PCH Assoc.*, **804 F.2d 193, 200 (2nd Cir. 1986)**)); *PSINet, Inc. v. Cisco Sys. Capital Corp.*

*(In re PSINet, Inc.)*, 271 B.R. 1, 44 (S.D.N.Y. 2001) ("The intent of the parties at the time the agreement was entered into is irrelevant to the determination of whether a true lease has been established."); *In re Clinton Nurseries, Inc.*, 2018 Bankr. LEXIS 1454, [*9 n.1] (Bankr. D. Conn. 2018).

In addition, there is nothing in the Guaranty which states that the Defendants waived the right to assert the true nature and legal effect of the Agreement, or dispute the Plaintiff's mischaracterization of the Agreement. Disputing the Plaintiff's mischaracterization of the Loan Agreement does not constitute an affirmative defense, as the nature and legal effect of the Agreement goes to the very nature of the underlying liability of GMNY. *See Orix Fin. Servs. V. Thunder Ridge Energy, Inc.*, 2005 U.S. Dist. LEXIS 41889, [*38] (S.D.N.Y. 2005) (Exhibit C); *Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082, 1089 (S.D.N.Y. 1995) ("A defense is not affirmative where it merely negates an essential element of the plaintiff's prima facie case.").

The Agreement transaction was a secured financing *from the very beginning.* Essentially the Plaintiff argues that it can come into court and call a horse a donkey, but that the Defendants are barred from presenting evidence to show that the horse is in fact a horse. There is no such bar in the Guaranty.

2.      The Defendants may properly challenge the amount owed by GMNY.

The Plaintiff has argued in other pleadings in this case that the Defendants may not challenge the amount owed by GMNY. This argument clearly is not correct under New York law, and the Defendants have the right to present evidence regarding any amounts owed by GMNY.

15

"In order to enforce a guaranty, a plaintiff must establish (1) the existence of the guaranty, (2) *the underlying debt*, and (3) the guarantor's failure to perform under the guaranty." *Merchant Cash & Capital LLC v. Edgewood Group*, LLC, 2015 U.S. Dist. LEXIS 94162 [*21] (S.D.N.Y. 2015) (emphasis added).  *See also Group 1 Auto, Inc. v. Country Imported Car Corp.*, 2012 U.S. Dist. LEXIS 190676, [*25-*26] (E.D.N.Y. 2012).  Thus, under New York law a "guarantor is liable 'only for the amount of the principal obligor's default.'"  *Merchant Cash & Capital LLC*, 2015 U.S. Dist. LEXIS 94162, [*21] (S.D.N.Y. 2015) (quoting *Sweeters v. Hodges*, 683 N.Y.S. 2d 9, 9 (1st Dep't 1998)).  *See also L & B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 92 (2d Cir. 1998) ("The language of the guaranty (unconditional as it is) is not a waiver of every defense to a damages claim, and does not foreclose a challenge to the calculation of the amount owed."); *Pro-Specialties v. Thomas Funding Corp.*, 812 F.2d 797, 799 (2nd Cir. 1987) ("[T]he district court could not have found a guarantee without first finding the principal debtor liable on the principal obligation."); *Midwest Corp. v. Global Cable, Inc.*, 688 F. Sup. 872, 875 (S.D.N.Y. 1988) ("the guarantor cannot be liable for an amount greater than that for which the principal is liable").  Nothing in the Guaranty waived the Defendants' ability to dispute and present evidence regarding the amount owed by GMNY, as the amount owed is part of the Plaintiff's prima facie case rather than an affirmative defense.

3.   <u>Waiver Argument</u>

The Plaintiff argues in other pleadings in this case that in the Guaranty the Defendants waived any affirmative defenses and are barred from raising the

Plaintiff's breach of its duties good faith, diligence, care and reasonableness as affirmative defenses.  This argument clearly is not correct under New York law, and the Defendants have the right to present evidence regarding their affirmative defenses.

Article 9-109(a)(1) of the New York Uniform Commercial Code ("NY UCC") provides that Article 9 of the NYUCC applies to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." Section 22(a) of the Agreement provides: "Security.  Lessee hereby grants Lessor a first priority security interest in all of its assets and property of any kind or nature whatsoever as security for all of its obligations under this Lease … ."  In addition, GMCT granted the Plaintiff a security interest in certain of its property to secure its obligations under a guaranty of GMNY's obligations under the Agreement and the Defendants granted the Plaintiff a security interest in their membership interest in GMCT.  The Plaintiff filed UUC-1 financing statements with the Connecticut Secretary of State to perfect its liens.  Thus, there can be no dispute that the NY UCC governed the Agreement, in that the Agreement and related documents created security interests in property of GMNY, GMCT and the Defendants.

Article 1-304 of the NY UCC provides: "Every contract or duty within this act imposes a duty of good faith in its performance and enforcement."  Article 1-302(b) of the NY UCC provides in part: "The obligations of good faith, diligence, reasonableness, and care prescribed by this act may not be disclaimed by agreement."  In addition, under New York law an absolute and unconditional

guaranty does not foreclose a guarantor's challenge that the creditor's wrongful post-execution conduct triggered the event that accelerates or causes the guarantor's liability. *Canterbury Realty & Equipment Corp. v. Poughkeepsie Sav. Bank*, 524 N.Y.S.2d 531, 535 (N.Y. App. Div. 1988).

"The prevailing view is that the UCC applies to those guaranties that are ancillary to the UCC transaction." *Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc.*, 2009 U.S. Dist. LEXIS 57452, at [*31] (S.D.N.Y. July 7, 2009) (Exhibit C). "In determining whether a guaranty agreement is ancillary to the UCC transaction, courts . . . look to evidence of whether the guaranty was executed as a part of the same transaction, relates exclusively to the transaction, and was an integral part of the transaction. In addition, courts consider whether the guaranty was executed contemporaneously with, or in simultaneous contemplation of, the UCC transaction." Id. at [*32] (citations omitted). Where a guaranty is closely interrelated with the underlying loan transaction, the entire transaction, including the guaranty, is governed by the UCC and, accordingly, a guarantor may not waive right to assert duty of good faith, reasonableness, care and diligence. *Royal Palm Senior Investors, LLC*, 2009 U.S. Dist. LEXIS 57452, at *34. *See also Centerbank v. Dowcom, Inc.*, 1993 Conn. Super. LEXIS 3024, [*4] (Conn. Super. 1993) ("[A] lender owes the duty of good faith to third parties, such as guarantors, who are not 'strangers to the transaction.'"). The Plaintiff has not cited any case that states to the contrary in the context of a transaction that is governed by Article 9 of the UCC.

Here, there can be no dispute that the Guaranty is governed by Article 9 of

the NYUCC.  It was executed as part of one transaction, all documents were entered into and dated the same day, and the Guaranty applies exclusively to the transaction.  Accordingly, the Guaranty is governed by Article 9 of the NY UCC, and as a matter of law the Defendants could not and did not waive the defenses of the Plaintiff's breaches of its duties of good faith, reasonableness, care and diligence, and the Defendants have the right to present evidence on those defenses.

### Response to Plaintiff's Specific Objections to Exhibits BBBB and CCCC:

In the Second Circuit and in this District, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."  *Belefonte Re Ins. Co. v. Argonaut Ins Co.*, 757 F.2d 523, 528-29 (2nd Cir. 1985).  *See also Setevage v. Dep't of Homeland Security*, 539 Fed. Appx. 11, 13 (2nd Cir. 2013); *Censor v. ASC Techs. Of Conn., LLC*, 900 F.Supp.2d 181, 206 (D.Conn. 2012); *Pulaski v. Stratford Bd. Of Educ.*, 2006 LEXIS 56735, *18 (D.Conn. 2006).  "A court can appropriately treat statements in briefs as binding judicial admissions of fact."  *Purgess v. Sharrock*, 33 F.3d 134, 144 (2nd Cir. 1994) ("Counsel's statement of fact constituted an admission of a party.  It was made in a legal brief filed with the court subject to the penalty of sanctions.  There can be little dispute, therefore, that defendants' counsel was acting in an authorized capacity when making the assertion.").  *See also Censor*, 900 F.Supp.2d at 206; *Pulaski*, 2006 LEXIS 56735, *18.  Nothing in Local Rule 56(a) changes the foregoing rule with respect to briefs.

C. *Deposition Testimony*

The parties do not seek to have any witness testify by deposition.

IX. <u>Stipulation of Uncontroverted Facts</u>

1.      The Defendants are members of Garage Media, LLC ("GMCT"), a Connecticut limited liability company that was formed on or about January 15, 2009.

2.      GMCT is the sole member of Garage Media NY LLC ("GMNY"), a New York limited liability company that was formed on or about October 5, 2010.

3.      By an agreement dated as of May 20, 1996 (the "Permit Agreement"), in exchange for fees as provided in the agreement, The Port Authority of New York and New Jersey (the "Port") granted Transportation Displays, Incorporated (now known as CBS Outdoor Media, hereinafter "CBS") permission to use portions of the exterior of the Port Authority Bus Terminal (the "PA Terminal") for the installation, maintenance and operation of outdoor advertising signs.    The Permit Agreement granted CBS the right to license its rights to a third party with the prior approval of the Port.

4.      By a supplemental agreement made as of October 26, 2010, the Port and CBS agreed, among other things, that the term of the Permit Agreement was extended to December 31, 2018.

5.      On October 26, 2010, GMCT, GMNY, the Defendants, the Plaintiff and certain other parties entered and/or executed the following agreements and documents:

a.     GMNY and CBS Outdoor Media ("CBS") entered into a Display Agreement dated as October 26, 2010.  The Port agreed to and acknowledged the Display Agreement.  Pursuant to the Display Agreement, CBS licensed its rights under the Permit Agreement to GMNY for the purpose of granting GMNY the right to install a Mediamesh digital sign (the "Sign") on the PA Terminal.

b.     GMNY, GMCT, A2a Media, Inc., GKD-USA Inc. ("GKD") and the Plaintiff entered into an Equipment Purchase Agreement, pursuant to which, among other things, GKD agreed to sell and construct the Sign.  Exhibit A-1 to the Equipment Purchase Agreement provides that the total purchase price of the Sign is $6,026,000.00.

c.     On October 26, 2010, GMNY and the Plaintiff entered into Lease No. 001.

d.     The Defendants signed the document titled "Guaranty" which is annexed as Exhibit F to the Plaintiff's Complaint.

e.     GMCT signed a document titled Guaranty, dated October 26, 2010.

6.     The Sign is an electronic billboard that displays advertisements for various companies, including Netflix, Facebook, and Twitter.

7.     The terms of the Agreement were modified pursuant to Amendment No. 1 dated June 13, 2010, Amendment No. 2 dated July 28, 2011, Amendment No. 3 dated September 1, 2012, and Amendment No. 4 contained in an Amendment dated as of March 31, 2013.

8.     The Sign went "live" on June 10, 2010.  During the course of its operation, the Sign experienced technical problems and system failures.

9.     GMNY has failed to make certain payments of rent under the Agreement in accordance with the terms thereof.  Plaintiff has not received any payment whatsoever from GMNY of rent in accordance with the terms of the Agreement since a partial payment made by GMNY which was applied to the amount due March 1, 2015.

10.     On behalf of GMNY, Plaintiff issued that certain Irrevocable Standby Letter of Credit No. OSB 009044 dated December 11, 2015, in the amount of $600,000.00 (the "Letter of Credit") for the benefit of Outfront Media Group, LLC, as successor in interest to CBS ("Outfront").   Outfront drew on the entire principal balance of the Letter of Credit in the amount of $600,000.00 in or about December 2018.

### X. Anticipated Evidentiary Problems

Attached hereto and filed contemporaneously herewith is Plaintiff's Motion in Limine seeking to preclude Defendants' introduction of testimony or evidence in support of any defense that is barred under the terms of the Guaranty. Plaintiff's and Defendants' objections to the proposed exhibits, along with their respective responses to those objections, are set forth in Section VII(B) above. Otherwise, the parties do not anticipate any significant evidentiary issues at trial.

[This space left intentionally blank.]

Respectfully Submitted,

Date: February 28, 2020       **METZ LEWIS BRODMAN MUST O'KEEFE LLC**

By: */s/ Justin M. Tuskan*
    John R. O'Keefe, Jr. (phv00948)
    Justin M. Tuskan (phv00926)
    535 Smithfield Street, Suite 800
    Pittsburgh, PA 15222
    Phone: (412) 918-1100
    Fax: (412) 918-1199
    jokeefe@metzlewis.com
    jtuskan@metzlewis.com
    *Attorneys for Plaintiff*

    - and -

**ZEISLER & ZEISLER, P.C**

By: */s/ Eric Henzy*
    Eric A. Henzy (ct12849)
    Christopher H. Blau (ct30120)
    10 Middle Street, 15th Floor
    Bridgeport, CT 06604
    Phone: (203) 368-4234
    Fax: (203) 367-9678
    ehenzy@zeislaw.com
    cblau@zeislaw.com
    *Attorneys for Defendants*

**Exhibit A**
**Plaintiff's Exhibit List**

| Exhibit Number | Document | Description |
|---|---|---|
| 1 | Lease No. 001 dated October 26, 2010 | Underlying Lease No. 001 by and between Plaintiff and Garage Media New York ("GMNY") |
| 2 | Guaranty dated October 26, 2010 | Unconditional guaranty agreement of Defendants to Plaintiff |
| 3 | Amendment No. 1 dated June 13, 2010 | Amendment to Lease No. 001 |
| 4 | Amendment No. 2 dated July 28, 2011 | Amendment to Lease No. 001 |
| 5 | Amendment No. 3 dated September 1, 2012 | Amendment to Lease No. 001 |
| 6 | Amendment No. 4 dated March 31, 2013 | Amendment to Lease No. 001 |
| 7 | Equipment Purchase Agreement dated October 26, 2010 | Agreement governing purchase of sign leased by GMNY pursuant to Lease No. 001 |
| 8 | Agreement between the Port Authority of New York-New Jersey and Transportation Displays, Inc. dated May 20, 1996 | Display agreement permitting signage on Port Authority building |
| 9 | Supplemental Agreement No. 2 dated October 26, 2010 | Supplement to above agreement |
| 10 | Display Agreement dated October 26, 2010 | Agreement governing display of sign leased by GMNY |
| 11 | Acknowledgement and Agreement b/t Garage Media NY LLC, Macquarie Equipment Finance, CBS Outdoor et al. dated October 26, 2010 | Acknowledgement executed in connection with Display Agreement |
| 12 | Pledge Agreement dated October 26, 2010 | Pledge of membership interests issued in connection with Lease No. 001 |
| 13 | Amended and Restated Security Agreement and any documents recorded/filed in connection therewith | Security agreement and ancillary documents executed in connection with Lease No. 001 |
| 14 | Draft Forbearance Agreement | Proposed forbearance agreement between Plaintiff and Defendants |

| 15 | **Demand Letter to Garage Media dated February 12, 2013** | **Plaintiff's demand for past due payments under Lease No. 001** |
|---|---|---|
| 16 | **Demand Letter to Garage Media dated October 3, 2013** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 17 | **Demand Letter to Garage Media dated October 15, 2013** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 18 | **Demand Letter to Garage Media dated November 11, 2013** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 19 | **Demand Letter to Garage Media dated December 10, 2013** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 20 | **Demand Letter to Garage Media dated January 3, 2014** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 21 | **Demand Letter to Garage Media dated February 12, 2014** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 22 | **Demand Letter to Garage Media dated April 4, 2014** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 23 | **Demand Letter to Garage Media date July 10, 2014** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 24 | **Notice of Default dated October 2, 2018** | **Plaintiff's demand for past due payments under Lease No. 001** |
| 25 | **Garage Media Payment History and Past Due Calculation** | **Calculation of amount due and owing from GMNY and Defendants** |
| 26 | **Irrevocable Standby Letter of Credit No. OSB 009044** | **Letter of credit issued on behalf of GMNY for the benefit of Outfront Media Group** |
| 27 | **Outfront letter correspondence dated December 5, 2018** | **Letter from Outfront Media Group to Plaintiff stating that GMNY was in default of certain obligations** |
| 28 | **Field Activate Report** | **Report prepared for GMNY discussing sales and marketing efforts in connection with leased Port Authority sign.** |
| 29 | **GMNY January 2012 letter to A2a Media** | **Letter from GMNY to A2a Media discussing failure to provide adequate services** |
| 30 | **GMNY June 2012 letter to A2a Media** | **Letter from GMNY to A2a Media discussing failure to provide adequate services** |

| 31 | GMNY March 2014 letter to A2a Media | Letter from GMNY to A2a Media terminating agreement |
|----|-----|-----|
| 32 | Letter of Credit Demand dated January 23, 2019 | Demand letter issued in connection with abovementioned Letter of Credit |
| 33 | Metz Lewis Legal Invoices | Invoices for services rendered to Plaintiff in connection with Plaintiff's enforcement of its rights against GMNY and Defendants |
| 34 | Responses to Plaintiff's Interrogatories and Requests for Production | Defendants' written responses to Plaintiff's interrogatories |
| 35 | Supplemental Responses to Plaintiff's Interrogatories and Requests for Production | Defendants' written responses to Plaintiff's requests for production |

**Exhibit B**
**Defendants' Exhibit List**

| Exhibit | Document | Description |
|---------|----------|-------------|
| A | Operating Agreement dated January 15, 2009 | Operating Agreement of Garage Media, LLC ("GM") |
| B | Amendment No. 1 dated December 3, 2013 | Amendment to Operating Agreement of GM |
| C | Operating Agreement dated October 5, 2010 | Operating Agreement of Garage Media NY, LLC ("GMNY") |
| D | Agreement between the Port Authority of New York-New Jersey and Transportation Displays, Inc. ("PABT") dated May 20, 1996 | Display agreement permitting signage on Port Authority building |
| E | Supplemental Agreement No. 2 dated October 26, 2010 | Supplement to above agreement |
| F | Display Agreement dated October 26, 2010 | Agreement governing display of sign leased by GMNY |
| G | Guaranty dated October 26, 2010 | Guaranty signed by Gary Neff, John Schmid and David Schmid |
| H | Guaranty dated October 26, 2010 | Guaranty signed by GMCT |
| I | Equity Power Agreement | Equity Power, Executed by John Schmid as Pledgor |
| J | Equity Power Agreement | Equity Power, Executed by David Schmid as Pledgor |
| K | Equity Power Agreement | Equity Power, Executed by Gary Neff as Pledgor |
| L | Equity Power Agreement | Equity Power, Executed by GM as Pledgor |
| M | Pledge Agreement dated October 26, 2010 | Pledge of membership interests issued in connection with Lease No. 001; Gary Neff, John Schmid and David Schmid as Debtors |
| N | Pledge and Security Agreement dated October 26, 2010 | Pledge and security agreement associated with Lease No. 001; GMNY as Debtor |
| O | Service Purchase Agreement dated October 22, 2010 | Services Purchase Agreement entered into by and between GMNY and A2a Media, Inc. |
| P | GMNY letter to A2a Media, Inc. dated July 15, 2012 | Letter from GMNY to A2a Media, Inc. |
| Q | Equipment Purchase Agreement dated October 26, 2010 | Agreement governing purchase of sign leased by GMNY pursuant to Lease No. 001 |

| R | Lease No. 001 dated October 26, 2010 | Agreement by and between Plaintiff and GMNY |
|---|---|---|
| S | Amendment No. 1 dated June 13, 2011 | Amendment to Lease No. 001 |
| T | Amendment No. 2 dated July 28, 2011 | Amendment to Lease No. 001 |
| U | Amendment No. 3 dated September 1, 2012 | Amendment to Lease No. 001 |
| V | Amendment No. 4 dated March 31, 2013 | Amendment to Lease No. 001 |
| W | UCC Financing Statement dated November 12, 2010 | UCC 1 Financing Statement filed by Macquarie Equipment Finance LLC (a.k.a. Hunting Technology Finance or "HTF") against GMNY |
| X | UCC Financing Statement dated November 17, 2010 | UCC 1 Financing Statement filed by Macquarie Equipment Finance LLC against GM |
| Y | UCC Financing Statement dated November 17, 2010 | UCC 1 Financing Statement filed by Macquarie Equipment Finance against Gary Neff, John Schmid and David Schmid |
| Z-1 | Tax Return, 2010 | Tax Return for GM and related entities, 2010 |
| Z-2 | Tax Return, 2011 | Tax Return for GM and related entities, 2011 |
| Z-3 | Tax Return, 2012 | Tax Return for GM and related entities, 2012 |
| Z-4 | Tax Return, 2013 | Tax Return for GM and related entities, 2013 |
| Z-5 | Tax Return, 2014 | Tax Return for GM and related entities, 2014 |
| Z-6 | Tax Return, 2015 | Tax Return for GM and related entities, 2015 |
| Z-7 | Tax Return, 2016 | Tax Return for GM and related entities, 2016 |
| AA | HTF Memorandum | Memorandum regarding the write off of outstanding GM obligations |
| BB | Email chain most recently dated January 23, 2018 | HTF internal email chain; *RE: Garage Media Exposure* |
| CC | Email chain most recently dated January 17, 2018 | HTF internal email chain; *RE: Garage Media Exposure* |
| DD | Email chain most recently dated January 11, 2018 | Email chain involving HTF, GM and PABT; *Re: Port Authority* |
| EE | Email chain most recently dated January 4, 2018 | Email chain involving HTF, GM and PABT; *RE: Installation, Maintenance and Operation of Digital Advertising* |

| | | *Signage at the Port Authority Bus Terminal* |
|---|---|---|
| FF | Email chain most recently dated May 7, 2015 | Email chain involving HTF and GM; *FW: Garage Media Update* |
| GG | Email chain most recently dated March 24, 2014 | Email chain involving HTF, Clear Channel et al.; *FW: Garage Media Update* |
| HH | Email chain most recently dated January 29, 2014 | Email chain involving HTF, GM and Clear Channel; *RE: Garage Media Management Agreement (1.23.14 clean)* |
| II | Email chain most recently dated January 24, 2014 | Email chain involving HTF and GM; *RE: Garage Media Transaction Sale Proposal* |
| JJ | Mediamesh Lease Transaction Sale Proposal dated January 24, 2014 | Proposal of purchase of Mediamesh display and associated lease by Jager Resources, Inc. |
| KK | Email chain most recently dated January 22, 2014 | Email chain involving HTF and GM; *Garage Media Transaction Sale Proposal* |
| LL | Email chain most recently dated December 20, 2013 | Email chain involving HTF and GM; *Re: Garage Media Interviews* |
| MM | Email chain most recently dated October 16, 2013 | HTF internal email chain; *FW: Garage Media* |
| NN | Email chain most recently dated October 15, 2013 | HTF internal email chain; *Re: Garage Media – Late 10/1 Payment* |
| OO | Email chain most recently dated October 17, 2013 | HTF internal email chain; *RE: Garage Media* |
| PP | Email chain dated May 27, 2014 | HTF internal email chain; *RE: Garage Media* |
| QQ | Email chain most recently dated August 30, 2010 | Email chain involving HTF and GM; *Garage Media – Cost Update / Update on Open Items / Call today* |
| RR | Macquarie Equipment Finance Facility Approval dated August 31, 2010 | HTF risk management memo approving GM loan |
| SS | Email chain most recently dated January 8, 2013 | HTF internal email chain; *RE: Garage Media Update* |
| TT | Email chain most recently dated February 5, 2013 | HTF internal email chain; *RE: Summary of Beekman/ Garage Media Meeting* |
| UU | Memorandum dated October 20, 2012 | HTF internal memo; *Garage Media – Update and Proposed Restructure* |
| VV | Email chain most recently dated April 27, 2017 | Email chain involving HTF, GM, PABT and Clear Channel; *Garage Media* |
| WW | Commercial & Industrial Forecast | HTF internal report detailing and |

| | and Criticized Asset Report dated May 2, 2017 | forecasting the status of GM Loan |
|---|---|---|
| XX | Aging Balance Report as of June 27, 2016 | HTF Aging Balance Report related to GM Loan |
| YY | Invoice dated September 7, 2015 | HTF invoice to GM detailing outstanding balance |
| ZZ | Invoice dated October 8, 2015 | HTF invoice to GM detailing outstanding balance |
| AAA | Invoice dated November 7, 2015 | HTF invoice to GM detailing outstanding balance |
| BBB | Invoice dated December 8, 2015 | HTF invoice to GM detailing outstanding balance |
| CCC | Invoice dated January 9, 2016 | HTF invoice to GM detailing outstanding balance |
| DDD | Invoice dated February 6, 2016 | HTF invoice to GM detailing outstanding balance |
| EEE | Invoice dated February 28, 2016 | HTF invoice to GM detailing outstanding balance |
| FFF | Invoice dated April 6, 2016 | HTF invoice to GM detailing outstanding balance |
| GGG | Invoice dated May 7, 2016 | HTF invoice to GM detailing outstanding balance |
| HHH | Invoice dated June 6, 2016 | HTF invoice to GM detailing outstanding balance |
| III | Invoice dated July 7, 2016 | HTF invoice to GM detailing outstanding balance |
| JJJ | Invoice dated August 7, 2016 | HTF invoice to GM detailing outstanding balance |
| KKK | Invoice dated September 6, 2016 | HTF invoice to GM detailing outstanding balance |
| LLL | Invoice dated October 7, 2016 | HTF invoice to GM detailing outstanding balance |
| MMM | Invoice dated November 6, 2016 | HTF invoice to GM detailing outstanding balance |
| NNN | Invoice dated December 7, 2016 | HTF invoice to GM detailing outstanding balance |
| OOO | Invoice dated January 7, 2017 | HTF invoice to GM detailing outstanding balance |
| PPP | Invoice dated February 4, 2017 | HTF invoice to GM detailing outstanding balance |
| QQQ | Invoice dated March 7, 2017 | HTF invoice to GM detailing outstanding balance |
| RRR | Invoice dated May 7, 2017 | HTF invoice to GM detailing outstanding balance |
| SSS | Invoice dated June 6, 2017 | HTF invoice to GM detailing outstanding balance |

| TTT | Invoice dated July 7, 2017 | HTF invoice to GM detailing outstanding balance |
|---|---|---|
| UUU | Invoice dated August 7, 2017 | HTF invoice to GM detailing outstanding balance |
| VVV | Invoice dated September 6, 2017 | HTF invoice to GM detailing outstanding balance |
| WWW | Invoice dated October 7, 2017 | HTF invoice to GM detailing outstanding balance |
| XXX | Invoice dated November 6, 2017 | HTF invoice to GM detailing outstanding balance |
| YYY | Invoice dated December 7, 2017 | HTF invoice to GM detailing outstanding balance |
| ZZZ | Invoice dated January 7, 2018 | HTF invoice to GM detailing outstanding balance |
| AAAA | Invoice dated February 4, 2018 | HTF invoice to GM detailing outstanding balance |
| BBBB | Brief in Support of Plaintiff's Motion for Summary Judgment filed July 26, 2019 (ECF No. 38-1) | Plaintiff's written brief in support of Plaintiff's motion |
| CCCC | Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment filed July 26, 2019 (ECF No. 38-2) | Plaintiff's written statement of material facts in support of Plaintiff's motion |